1  Roderick A. McLeod (State Bar No. 104694)
   Peter E. Davids (State Bar No. 229339)
2  JONES DAY
   555 California Street, 26th Floor
3  San Francisco, CA  94104-1500
   rmcleod@jonesday.com
4  pdavids@jonesday.com
   Telephone:    (415) 626-3939
5  Facsimile:    (415) 875-5700

6  Attorneys for Defendant
   NATIONAL CITY BANK

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11

12  CHAU PAPATHEODOROU, an individual,      Case No. C 08-01905 JW

13                  Plaintiff,              NOTICE OF MOTION AND MOTION
                                            BY DEFENDANT NATIONAL CITY
14        v.                                BANK TO TRANSFER OR DISMISS
                                            FOR IMPROPER VENUE; AND TO
15  ROGER CLARK, an individual; CRM         DISMISS PURSUANT TO FRCP
    INVESTORS CORPORATION, a Michigan       12(b)(6); POINTS AND AUTHORITIES
16  corporation; FORTRESS GROUP USA,        IN SUPPORT THEREOF
    LLC, a Michigan limited liability company;
17  NATIONAL CITY BANK, an Ohio             Date:    September 15, 2008
    corporation, and DOES 1 through 50,     Time:    9:00 a.m.
18  inclusive,                              Dept.:   Courtroom 8
                                            Judge:   Hon. James Ware
19                  Defendants.

20

21

22

23

24

25

26

27

28

SFI-585919v2                               National City Bank's Motion to Transfer
                                           Case No. C 08-01905 JW

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................... 2

II.  FACTUAL BACKGROUND ......................................................................... 3

III. ARGUMENT ................................................................................................. 7

A.-  The Parties' Forum Selection Clause Mandates Dismissal or Transfer to the
     Northern District of Ohio ...................................................................... 7

     1.   The Forum Selection Clause Applies to Plaintiff's Claims ...................... 7

     2.   Forum Selection Clauses Must Be Enforced Absent a "Strong
          Showing" That They Are Unreasonable. ................................................... 8

     3.   The Forum Selection Clause is Reasonable ............................................. 10

B.   Aside From the Forum Selection Clause, The Action Must Be Dismissed or
     Transferred Because Venue is Improper in This District...................................... 11

C.   Even if Venue Were Proper in this District, the Action Should Be
     Transferred for the Convenience of the Parties and the Witnesses and in the
     Interests of Justice .................................................................................... 14

     1.   Legal Standard ....................................................................................... 14

     2.   Plaintiff Might Have Brought this Action in the Northern District
          of Ohio ................................................................................................... 14

     3.   Transferring this Action to the Northern District of Ohio is
          Convenient and in the Interest of Justice ................................................ 15

D.   The Third and Fourth Causes of Action Against National City Bank Fail to
     State a Claim Upon Which Relief Can Be Granted ............................................ 16

IV.  CONCLUSION ............................................................................................ 18

1

# TABLE OF AUTHORITIES

2

**Page**

3

<u>**Cases**</u>

4

*A.J. Indus., Inc. v. Dist. Ct.*
   503 F.2d 384 (9th Cir. 1974)...................................................................................... 14

5

6

*Am. Home Assurance Co. v. TGL Container Lines, Ltd.*
   347 F. Supp. 2d 749 (N.D. Cal. 2004) ........................................................................ 9

7

*Argueta v. Banco Mexicano*
   87 F.3d 320 (9th Cir. 1996)................................................................................ 9, 10

8

9

*Cairo, Inc. v. Crossmedia Servs., Inc.*
   No. C 04-04825 JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ............................ 7

10

*Decker Coal Co. v. Commonwealth Edison Co.*
   805 F.2d 834 (9th Cir. 1986)...................................................................................... 12

11

12

*Ellis v. Costco Wholesale Corp.*
   372 F. Supp. 2d 530 (N.D. Cal. 2005) ...................................................................... 15

13

14

*Gordon v. D & G Escrow Corp.*
   48 Cal. App. 3d 616 (1975)........................................................................................ 17

15

16

*Hatch v. Reliance Ins. Co.*
   758 F.2d 409 (9th Cir. 1985)...................................................................................... 14

17

*Hoffman v. Blaski*
   363 U.S. 335 (1960) ................................................................................................... 14

18

19

*Hsu v. VTEX Energy, Inc.*
   No. C06-07688 JW, 2007 WL 1232056 (N.D. Cal. Apr. 26, 2007) .......................... 15

20

*Hurst v. Enter. Title Agency, Inc.*
   157 Ohio App. 3d 133 (2004) .................................................................................... 17

21

22

*Jaco Envtl. Inc. v. Appliance Recycling Ctrs. Of Am. Inc.*
   No. C 06-06601 JSW, 2007 WL 951274 (N.D. Cal. Mar. 27, 2007) ........................ 16

23

24

*Jenkins Brick Co. v. Bremer*
   321 F.3d 1366 (11th Cir. 2003)................................................................................... 12

25

*Lee v. Title Ins. & Trust Co.*
   264 Cal. App. 2d 160 (1968)...................................................................................... 17

26

27

*Makinen v. Little*
   No. Civ. S-06-01887 FCD, 2006 WL 3437529 (E.D. Cal. Nov. 27, 2006).............. 12

28

# TABLE OF AUTHORITIES
## (Continued)

Page

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*
  858 F.2d 509 (9th Cir. 1988) ................................................................................... 7, 9

*Murphy v. Schneider Nat'l, Inc.*
  362 F.3d 1133, 1138 (9th Cir. 2004) ........................................................................... 9

*Myers v. Bennett Law Offices*
  238 F.3d 1068 (9th Cir. 2001) ................................................................................... 11

*Neitzke v. Williams*
  490 U.S. 319 (1989) ................................................................................................... 16

*Pac. Health Advantage v. Cap Gemini Ernst & Young U.S. LLC*
  No. C 07-1565 PJH, 2007 WL 1288385 (N.D. Cal. May 2, 2007) ............................ 10

*Pippin v. Kern-Ward Bldg. Co.*
  8 Ohio App. 3d 196 (1982) ........................................................................................ 17

*Pratt v. Silversea Cruises, Ltd.*
  No. C 05-0693 SI, 2005 WL 1656891 (N.D. Cal. July 13, 2005) ............................... 9

*SEC v. Ross*
  504 F.3d 1130 (9th Cir. 2007) ................................................................................... 14

*Starlight Co. v. Arlington Plastics Mach., Inc.*
  No. C 01-1121 SI, 2001 WL 677908 (N.D. Cal. June 8, 2001) ................................... 9

*Stewart Org. v. Ricoh Corp.*
  487 U.S. 22 (1988) ..................................................................................................... 10

*Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.*
  27 Cal. 4th 705 (2002) ............................................................................................... 17

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*
  915 F.2d 1351 (9th Cir. 1990) ..................................................................................... 7

*The Bremen v. Zapata Off-Shore Co.*
  407 U.S. 1 (1972) ......................................................................................................... 9

*Trans-Tec Asia v. M/V HARMONY CONTAINER*
  435 F. Supp. 2d 1015 (C.D. Cal. 2005) ....................................................................... 7

*Vitria Tech., Inc. v. Cincinnati Ins. Co.*
  No. C 05-01951 JW, 2005 WL 2431192 (N.D. Cal. Sept. 30, 2005) .................... 11, 12

1

## TABLE OF AUTHORITIES
### (Continued)

2
                                                                                    **Page**

3

*Vogt-Nem, Inc. v. M/V Tramper, West Afr. Shipping Co.*

4     263 F. Supp. 2d 1226 (N.D. Cal. 2002) ...................................................................... 8

5     **Statutes**

6     28 U.S.C. § 1391 ........................................................................................................ 2

7     28 U.S.C. § 1391(a) ........................................................................................ 2, 11, 12

8     28 U.S.C. § 1391(a)(1) ............................................................................................. 12

9     28 U.S.C. § 1391(a)(2) ....................................................................................... 11, 15

10    28 U.S.C § 1391(a)(3) .............................................................................................. 13

11    28 U.S.C. § 1404(a) ........................................................................................ 2, 8, 14

12    28 U.S.C. § 1406(a) .......................................................................................... 8, 11

13    Ohio Rev. Code § 2305.06 ...................................................................................... 10

14
      Ohio Rev. Code § 2305.09 ...................................................................................... 10
15

16    **Rules**

17    Fed. R. Civ. P. 12(b)(3) ............................................................................................ 8

18    Fed. R. Civ. P. 12(b)(6) ............................................................................................ 7

19

20

21

22

23

24

25

26

27

28

1

2

## NOTICE OF MOTION AND MOTION TO DISMISS OR TRANSFER VENUE

## AND TO DISMISS THE THIRD AND FOURTH CAUSES OF ACTION

3      PLEASE TAKE NOTICE that on September 15, 2008 at 9:00 a.m., or as soon thereafter

4 as the matter may be heard, before the Honorable James Ware, Courtroom 8 of the above-entitled

5 court, located at 280 South First Street, San Jose, California, defendant National City Bank will

6 move pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §§ 1406 and 1404(a) to dismiss or

7 transfer this action to the Northern District of Ohio.  National City Bank will also move pursuant

8 to Rule 12(b)(6) to dismiss the Third and Fourth Causes of Action for failure to state a claim upon

9 which relief can be granted.

10      National City Bank seeks dismissal or transfer on three independent grounds:  the contract

11 at issue contains a mandatory and enforceable forum selection clause in favor of the Northern

12 District of Ohio; venue is improper in this district but proper in the Northern District of Ohio; and

13 a transfer to Ohio would be convenient and in the interests of justice.  National City Bank also

14 seeks dismissal of Plaintiff's causes of action for negligence and breach of fiduciary duty for

15 failure to state a claim upon which relief can be granted.  Both of these causes of action are based

16 on an allegation that National City Bank failed to investigate "suspicious" escrow instructions,

17 but under the governing law escrow agents have no such duty.

18      This motion is based on this Notice of Motion and Motion, the accompanying

19 Memorandum of Points and Authorities, the Declarations of Dawn DeWerth and Joseph C. Penko

20 filed herewith, the pleadings and papers on file in this action, and any other matters presented to

21 the Court during the oral argument and hearing of this motion.

22

23                          ## STATEMENT OF THE ISSUES

24      1.      Should this action be dismissed or transferred to the Northern District of Ohio?

25      2.      Should the Third and Fourth Causes of Action be dismissed?

26

27

28

1

## I.    <u>INTRODUCTION</u>

2      This action arises out of an investment contract between Plaintiff Chau Papatheodorou

3  and Defendants Roger Clark, CRM Investors Corporation, and Fortress Group USA, LLC

4  (collectively referred to as "Clark").  Plaintiff also brings various contract-based claims against

5  National City Bank, which held the funds that Plaintiff deposited as part of her arrangement with

6  Clark, on the theory that she is a third-party beneficiary to an "Escrow Agreement" between

7  Clark and National City Bank.

8      This action should be transferred to the Northern District of Ohio for three independent

9  reasons.  First, the contract under which Plaintiff brings her claims against National City Bank

10  contains a mandatory forum selection clause in favor of the Northern District of Ohio.  Under

11  well-established precedent, forum selection clauses must be enforced except in the most

12  exceptional cases.  This is not such a case:  (1) the forum selection clause was not incorporated

13  into the contract as a result of fraud; (2) Plaintiff cannot show that litigating this action in the

14  Northern District of Ohio would be so gravely difficult as to effectively deny her of her day in

15  court; and (3) enforcement of the forum selection clause would contravene no public policy of

16  this district.

17      Second, even if the contract at issue in Plaintiff's claims against National City Bank did

18  not contain a forum selection clause, venue is improper in this district because it does not meet

19  the requirements of 28 U.S.C. § 1391.  The defendants do not all reside in the same state; only a

20  small part of the chain of events that gave rise to Plaintiff's claims occurred in this district; and

21  Plaintiff may bring the action in another district, most notably the Northern District of Ohio.

22  28 U.S.C. § 1391(a).  Under these circumstances, the Court must dismiss or transfer the action to

23  a district in which venue is proper.

24      Third, even if venue were proper in this district, a transfer to the Northern District of Ohio

25  would be appropriate under 28 U.S.C. § 1404(a).  The contract at issue was negotiated and

26  executed by National City Bank in the Northern District of Ohio, and all National City Bank

27  witnesses and records concerning the contract are located in the Northern District of Ohio.  In

28  addition, the contract at issue provides that it shall be interpreted and governed by Ohio law, and

1   the Northern District of Ohio will inevitably be more familiar with Ohio law. Thus, aside from

2   Plaintiff's residence in this district and her choice of a local forum, no substantial basis exists for

3   adjudicating the action in this district.

4        Aside from the impropriety of venue, Plaintiff's Third and Fourth Causes of Action

5   against National City Bank (negligence and breach of fiduciary duty) fail to state a claim upon

6   which relief can be granted. Under Ohio law and California law, the duties of an escrow agent

7   are limited to carrying out the terms of the escrow agreement. In her negligence and breach of

8   fiduciary duty claims, Plaintiff does not allege that National City Bank failed to carry out any

9   escrow instructions. Instead, Plaintiff claims that National City Bank breached a duty by "failing

10  to question Clark or investigate the suspicious Escrow Instructions . . . ." Compl. ¶¶ 61, 68. This

11  allegation is insufficient to state a claim upon which relief can be granted.

## II.    FACTUAL BACKGROUND

13       This action arises out of an investment agreement between Plaintiff and Clark. Compl.

14  ¶¶ 13-43, Exs. A-C. According to Plaintiff's allegations, the agreement called for Plaintiff to

15  invest $1 million via Clark; the investment would be "quite safe" because it would be held in an

16  escrow account until at least $1 million worth of Treasury Bills were deposited into the account;

17  and Plaintiff would receive a return of $180,000 per month for a period of fifteen months. *Id.*

18  ¶¶ 14-15, 18; Ex. A. Clark actually promised profits of 30% per month ($180,000 to Plaintiff,

19  $100,000 to Clark, and $20,000 to Plaintiff's investment advisor/broker Vernon Maes). *Id.*, Exs.

20  A, B (at Ex. B); Declaration of Roger Clark in Support of Defendants Roger Clark, CRM

21  Investors Corporation and Fortress Group USA, LLC's Motion to Transfer or Dismiss for

22  Improper Venue (filed May 22, 2008) (hereafter "Clark Decl."), ¶ 6.

23       Plaintiff invested $1 million in August 2007 and received payments of $180,000 in

24  September and October 2007 from Clark.[1] Compl. ¶¶ 22-23. After that, the payments stopped

25  and Plaintiff has received none of her principal back. *Id.* ¶¶ 27, 33, 42. According to the

---

[1] The two $180,000 payments to Plaintiff could only have come from Clark because, as shown by paragraph 14 of the Declaration of Dawn DeWerth in Support of Defendant National City Bank's Motion to Transfer or Dismiss for Improper Venue and to Dismiss Pursuant to FRCP 12(b)(6) (hereafter "DeWerth Decl."), no funds were ever paid out to Plaintiff by National City Bank.

1  Complaint, Plaintiff communicated with Clark after the payments ceased and, finally dissatisfied

2  with his explanation, sought return of her investment.  Compl. ¶¶ 33-38, Ex. C.  Plaintiff filed suit

3  on April 9, 2008.  *See id.* at p. 1.

4      In addition to bringing claims against Clark for breach of contract, fraud, conversion, and

5  intentional infliction of emotional distress, Plaintiff has alleged causes of action against National

6  City Bank regarding its administration of the account to which she wired her investment, and in

7  which she believed an equivalent value of Treasury Bills would be held as security.  *Id.* ¶¶ 14-15,

8  48, 55, 61, 68, 75, 79.  The basis for these claims is an August 2007 "Escrow Agreement"

9  between Clark and National City Bank under which National City Bank would hold funds

10  deposited by Plaintiff subject to instructions.  *Id.* ¶¶ 19-22, Ex. B.  Plaintiff alleges that she is a

11  third-party beneficiary of the agreement.  *Id.* ¶¶ 45, 52, 72.

12      ***The "Escrow Agreement" between Clark and National City Bank that Plaintiff attached***

13  ***to the Complaint differs materially from the one National City Bank executed.***  Although the

14  body of the agreement is the same, the terms of the two exhibits incorporated into the agreement

15  are significantly different.  *Compare* Compl. Ex. B *with* DeWerth Decl., Ex. 2.  The

16  "Participation Agreement" and "Irrevocable Instructions to Release Escrow Fund" attached to the

17  Complaint provide that National City Bank would hold Plaintiff's funds in an account until an

18  equivalent value of Treasury Bills were deposited.  Compl., Ex. B at Exs. A (¶ 3), B (Schedules

19  A-B).  The exhibits attached to the agreement National City Bank executed, however, contain no

20  such requirement.  DeWerth Decl., ¶ 13, Ex. 2.  The two versions of the exhibits also differ as to

21  who could provide instructions regarding the funds (Irrevocable Instructions, Schedule B), the

22  percentage of profits the investment would pay (Participation Agreement ¶ 3; Irrevocable

23  Instructions, Schedule C), and as to the manner in which funds would be returned to Plaintiff

24  (Participation Agreement ¶ 5).

25      In one significant regard, the two versions of the agreement are identical:  both contain

26  mandatory forum selection clauses in favor of the Northern District of Ohio:  "The parties agree

27  that any suit, action or proceeding with respect to this Agreement shall be brought within

28  Cuyahoga County, Ohio and do waive any question of personal jurisdiction or venue for the

1    purpose of carrying out this provision." Compl., Ex. B at ¶ 12; DeWerth Decl., Ex. 2 at ¶ 12.

2    Both versions also provide that "[t]his Agreement shall be construed, interpreted and governed in

3    all respects by the laws of the State of Ohio." Compl., Ex. B at ¶ 10; DeWerth Decl., Ex. 2 at

4    ¶ 10.

5         The background of the agreement with Clark that National City Bank executed is as

6    follows. In February 2006, Clark spoke to National City Bank trust officer Dawn DeWerth about

7    opening an account to hold client funds pending instructions from Clark as to where to transfer

8    those funds. DeWerth Decl., ¶ 8. Clark sent DeWerth a draft "Escrow Agreement" that became

9    the subject of negotiations over the next two months. *Id.* ¶ 9. The parties executed the agreement

10   in April 2006, and National City Bank opened an account in Fortress's name to hold investment

11   funds pending instructions from Clark. *Id.* Clark provided documents showing that he was the

12   managing member of Fortress. *Id.* Clark and National City Bank executed several similar

13   agreements in the following months. *Id.* ¶ 10. All of the negotiations were by telephone or in

14   writing, between Clark at his office in Grand Rapids, Michigan, and DeWerth at her office in

15   Cleveland, Ohio. *Id.* ¶ 6.

16        On August 15, 2007, National City Bank received a wire transfer in the amount of

17   $1,001,500 from Plaintiff referencing the Fortress account. *Id.* ¶ 11. DeWerth had received no

18   information about any such deposit and had never heard of Plaintiff, so DeWerth contacted Clark.

19   *Id.* Clark told her that Plaintiff was not supposed to fund the account until the following day and

20   that was why he had not yet sent over the paperwork. *Id.* Clark said the reference would be

21   "Fortress #202 Participation." *Id.* The following day, Clark sent DeWerth the "Escrow

22   Agreement" that relates to Plaintiff's investment. *Id.* ¶ 12. DeWerth signed the agreement in

23   Cleveland and returned the original to Clark in Grand Rapids. *Id.*

24        The agreement delivered to DeWerth sets forth the duties of National City Bank in the

25   section entitled "Irrevocable Instructions to Release Escrow Fund." *Id.*, Ex. 2 at Ex. B. The

26   instructions read in part as follows:

27

28

1
2
3
4
5

> The above Escrow Fund shall be held in the Client's Escrow Account until instructed by Roger L. Clark to transfer it to a non-depletion or blocked account at the investment bank until the term of the Fortress #202 Participation shall expire whereupon the Escrow Fund shall be returned to the Escrow Account. At that time, the Escrow Agent shall distribute the escrow funds to the Client of Fortress, namely Chau Papatheodorou per her provided banking coordinates.

6   *Id.* The agreement signed by Clark and DeWerth does not require Clark to deposit any

7   securities—United States Treasury Bills or otherwise—before withdrawing the funds from the

8   account. *Id.* DeWerth was unaware of the existence of any other version of the agreement. *Id.*

9   ¶ 12.

10   After execution of the agreement, DeWerth followed the instructions contained in the

11   agreement. *Id.* ¶ 14. The assets in the account were located in Cleveland, and National City

12   Bank administered the account in Cleveland, per instructions from Clark in Grand Rapids. *Id.*

13   ¶ 5-6. At Clark's direction, DeWerth transferred funds to outside accounts. *Id.* ¶ 14. Clark

14   never instructed DeWerth to disperse monies from the Fortress account in Cleveland to Plaintiff

15   in California. *Id.*

16   DeWerth had no contact with Plaintiff whatsoever until Plaintiff began copying DeWerth

17   on emails and letters to Clark in mid-January 2008. *Id.* ¶¶ 15-18. Soon after DeWerth received a

18   letter from Plaintiff setting forth representations that Clark had made to her, National City Bank

19   froze the remaining assets in the Fortress account. *Id.* ¶ 19.

20   DeWerth has never met Clark in person: all of her communications with Clark were via

21   telephone or e-mail between DeWerth's office in Cleveland and Clark's office in Grand Rapids.

22   *Id.* ¶ 6. DeWerth has never met with, spoken to, or written to Plaintiff, and has never traveled to

23   California in connection with the administration of the Fortress account. *Id.* ¶¶ 20-21. All

24   National City Bank employees who had any involvement in executing the agreement or

25   administering the account reside in the Northern District of Ohio, and all bank records and

26   computer systems are located in Cleveland. *Id.* ¶ 22-23; Declaration of Joseph C. Penko in

27   Support of Defendant National City Bank's Motion to Transfer or Dismiss for Improper Venue

28

1   and to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Penko Decl."), ¶ 4.  National City Bank has

2   no client relationship with Plaintiff.  DeWerth Decl. ¶ 24.

3              III.    **ARGUMENT**

4   **A.    The Parties' Forum Selection Clause Mandates Dismissal or Transfer to the
         Northern District of Ohio.**

5

6          1.    ***The Forum Selection Clause Applies to Plaintiff's Claims.***

7          The contract upon which Plaintiff bases her claims against National City Bank contains a

8   mandatory forum selection clause:  "The parties agree that any suit, action or proceeding with

9   respect to this Agreement *shall be brought* within Cuyahoga County, Ohio and do waive any

10  question of personal jurisdiction or venue for the purpose of carrying out this provision."  Compl.

11  Ex. B, ¶ 12 (emphasis added).  The Agreement that National City Bank executed contains the

12  identical forum selection clause.  DeWerth Decl., Ex. 2, ¶ 12.

13         Plaintiff alleges that she is a third-party beneficiary of the contract between Clark and

14  National City Bank.  Compl. ¶¶ 45, 52, 72.  Plaintiff seeks the benefits of the contract, and is

15  therefore also bound by its limitations.  *See*, *e.g.*, *TAAG Linhas Aereas de Angola v.*

16  *Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) (forum selection clauses can

17  bind third-party beneficiaries; "it is well-settled contract law that the scope of a third-party

18  beneficiary's rights is defined by the contract"); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858

19  F.2d 509, 514 n.5 (9th Cir. 1988) (forum selection clauses bind non-parties closely related to the

20  contractual relationship); *Trans-Tec Asia v. M/V HARMONY CONTAINER*, 435 F. Supp. 2d

21  1015, 1028 n.17 (C.D. Cal. 2005) ("[U]nder well-established precedent a third-party beneficiary

22  can be bound to the terms of a forum-selection clause contained in the contract to which it is a

23  beneficiary" (and cases cited therein)); *see also* Compl., Ex. B ¶ 9 (terms of the agreement

24  binding upon the parties' beneficiaries).

25         Forum selection clauses apply not only to contractual causes of action but also to any tort

26  causes of action that require interpretation of the contract.  *Manetti-Farrow, Inc.*, 858 F.2d at 514;

27  *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW, 2005 WL 756610, at *6 (N.D. Cal.

28  Apr. 1, 2005) (Ware, J.).  The forum selection clause governs all six of Plaintiff's claims against

1  National City Bank because they all require interpretation of the Agreement.  Three of the claims

2  explicitly sound in contract—breach of contract, specific performance, and breach of the implied

3  covenant of good faith and fair dealing.  Compl. ¶¶ 48, 55, 75.  The other three claims—

4  negligence, breach of fiduciary duty, and conversion—all require interpretation of National City

5  Bank's duties under the Agreement and whether the Agreement was "suspicious."  *See* Compl.

6  ¶¶ 61, 68 (alleging that National City Bank breached a duty to "investigate the suspicious Escrow

7  Instructions [Clark] presented to [National City Bank] as an exhibit to the Escrow Agreement"),

8  ¶ 79 (alleging that funds in the National City Bank account were held for Plaintiff's benefit and

9  that National City Bank had a duty to return them to her).

10       The Participation Agreement that Clark and Plaintiff executed also contains a forum

11  selection clause, this one in favor of Michigan.  Compl., Ex. A at ¶ 7.  Thereafter, Clark executed

12  the agreement with National City Bank, and the agreement contains the forum selection clause in

13  favor of the Northern District of Ohio.  Compl. ¶¶ 18-19, Exs. A, B; DeWerth Decl. ¶ 12-13, Ex.

14  2.  This latter agreement incorporated the earlier Participation Agreement as an exhibit.  Compl.

15  ¶ 19, Ex. B.  By freely agreeing that "any suit, action or proceeding with respect to this

16  Agreement *shall be brought* within Cuyahoga County, Ohio," Clark knowingly waived his right

17  to litigate this action in Michigan.  Compl., Ex. B at ¶ 12 (emphasis added).[2]

18
19  **2.    *Forum Selection Clauses Must Be Enforced Absent a "Strong Showing" That They Are Unreasonable.***

20       "A motion to dismiss premised on the enforcement of a forum selection clause should be

21  treated as a motion to dismiss for improper venue under Federal Rule of Civil Procedure

22  12(b)(3)."  *Vogt-Nem, Inc. v. M/V Tramper, West Afr. Shipping Co.*, 263 F. Supp. 2d 1226, 1229-

23  30 (N.D. Cal. 2002) (citing *Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY*, 294 F.3d

24  1171 (9th Cir. 2002)).  "Accordingly . . . the pleadings need not be accepted as true, and facts

25  outside the pleadings may be considered by the district court."  *Id.* at 1230.  The court resolves

---

26  [2]  For the same reason, Clark's competing motion to transfer this action to the Western
District of Michigan should be denied.  *See* Motion by Defendants Roger Clark, CRM Investors
27  Corporation and Fortress Group USA, LLC to Transfer of Dismiss for Improper Venue Under
Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a); or in the Alternative to Transfer Pursuant to
28  28 U.S.C. § 1404(a) (filed May 22, 2008).

1  factual conflicts in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d

2  1133, 1138 (9th Cir. 2004). "[B]ecause enforcement of a forum clause necessarily entails

3  interpretation of the clause before it can be enforced, federal law. . . applies to interpretation of

4  forum selection clauses." *Manetti-Farrow, Inc.*, 858 F.2d at 513.

5         Under federal law, forum selection clauses that specify a forum with mandatory language

6  are presumptively valid and "should control absent a strong showing that [they] should be set

7  aside." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see also*, *e.g.*, *Am. Home*

8  *Assurance Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 2d 749, 755 (N.D. Cal. 2004). A party

9  challenging enforcement of a forum selection clause must clearly show that it is "'unreasonable'

10  under the circumstances." *Bremen*, 407 U.S. at 10. This is a narrow exception, and the

11  challenging party bears "a heavy burden of proof." *Argueta v. Banco Mexicano*, 87 F.3d 320, 325

12  (9th Cir. 1996); *Murphy*, 362 F.3d at 1140. A forum selection clause is unreasonable only if

13  (1) its inclusion in the contract "was the result of fraud, undue influence, or overweening

14  bargaining power"; (2) "the selected forum is so 'gravely difficult and inconvenient' that the

15  complaining party will 'for all practical purposes be deprived of its day in court'; or (3)

16  enforcement of the forum selection clause "would contravene a strong public policy of the forum

17  in which the suit is brought." *Argueta*, 87 F.3d at 325 (quoting *Bremen*, 407 U.S. at 12-13, 15, 18

18  and *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 591 (1991)).

19         The three circumstances under which a forum selection clause will be found unreasonable

20  are themselves narrow. A party seeking to invalidate such a clause because of fraud "must show

21  that the clause itself was fraudulently included in the agreement, not claim the entire agreement

22  was a product of fraud." *Starlight Co. v. Arlington Plastics Mach., Inc.*, No. C 01-1121 SI, 2001

23  WL 677908, at *3 (N.D. Cal. June 8, 2001). To set aside a forum selection clause on the grounds

24  of grave difficulty, "plaintiff must show that it is an impossibility for her to try her case, not

25  simply a less convenient or effective means of doing so." *Pratt v. Silversea Cruises, Ltd.*, No.

26  C 05-0693 SI, 2005 WL 1656891, at *4 (N.D. Cal. July 13, 2005). Finally, to show a "strong

27  public policy" against enforcement, a plaintiff must overcome the fact that "[t]here plainly *is* a

28  public policy that strongly favors the enforcement of forum-selection clauses." *Pac. Health*

1   *Advantage v. Cap Gemini Ernst & Young U.S. LLC*, No. C 07-1565 PJH, 2007 WL 1288385, at

2   *3 (N.D. Cal. May 2, 2007) (citing *Argueta*, 87 F.3d at 325).  In short, "a valid forum selection

3   clause is given controlling weight in all but the most exceptional cases."  *Stewart Org. v. Ricoh*

4   *Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

5            **3.        *The Forum Selection Clause is Reasonable.***

6            Plaintiff cannot demonstrate that enforcement of the forum selection clause would be

7   unreasonable.  First, the clause was negotiated between National City Bank and Clark.  DeWerth

8   Decl. ¶¶ 9, 12.  Plaintiff was not a party to those negotiations and has no basis on which to assert

9   that inclusion of the clause "was a result of fraud, undue influence, or overweening bargaining

10  power."  More conclusively, Plaintiff's version of the "Escrow Agreement" contained the same

11  Ohio forum selection clause, so she must concede that she agreed to an Ohio forum.

12           Second, Plaintiff cannot show any grave difficulty in litigating this action in Ohio, let

13  alone that she would effectively be denied her day in court.  The circumstances suggest that

14  Plaintiff is financially secure, able to travel, and able to retain counsel in Ohio.  Plaintiff was in

15  possession of over $1 million in liquid assets and was willing to put them into an "investment

16  opportunity" on verbal assurances from Clark that it was "quite safe" (despite the promise of a

17  30% return each month) even though he would not divulge the identity of the securities trader

18  who would be investing her money.  *See* Compl. ¶¶ 14-15.  Plaintiff wired the money to National

19  City Bank on August 15, 2007 (*id*. ¶ 22; *see also* DeWerth Decl. ¶ 11), a day before she even

20  signed the investment agreement with Clark (Compl. ¶ 18, Ex. A).  After receiving no $180,000

21  profit payment in November 2007, Plaintiff and her husband traveled to Michigan to meet Clark

22  and had dinner with Clark and his wife.  *Id.* ¶ 31.  Plaintiff has retained counsel in California, and

23  there is no reason why she would be unable to retain counsel in Ohio.  Also, transfer or dismissal

24  of this action will not affect Plaintiff's ability to litigate the matter, as the statute of limitations

25  has not run in Ohio.  *See* Ohio Rev. Code §§ 2305.06, 2305.09 (attached hereto as Appendix A)

26  (the statute of limitations for a written contract is 15 years; the statute of limitations for fraud and

27  other torts alleged by Plaintiff is four years).

28

1    Finally, Plaintiff cannot point to any strong public policy in the Northern District of

2    California that would preclude enforcement of a forum selection clause in a dispute involving an

3    agreement that National City Bank negotiated and executed in Ohio, an account that National

4    City Bank administered in Ohio, and money that Plaintiff wired to Ohio without solicitation from

5    National City Bank.  The clause operates to provide National City Bank with a forum in its

6    principal place of business.  DeWerth Decl., ¶ 4.  Enforcement of the forum selection clause,

7    bargained for by the parties, will protect their legitimate expectations, further the interests of

8    certainty in contractual relations, and thereby discourage the filing of actions in improper venues.

9    For all the reasons discussed above, the Court should enforce the forum selection clause

10    and transfer this action to the Northern District of Ohio under 28 U.S.C. § 1406(a).

11
**B.    Aside From the Forum Selection Clause, The Action Must Be Dismissed or
Transferred Because Venue is Improper in This District.**
12

13    "The district court of a district in which is filed a case laying venue in the wrong division

14    or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or

15    division in which it could have been brought."  28 U.S.C. § 1406(a).  In a civil action in which

16    jurisdiction is based solely on diversity of citizenship, venue is proper only in:

17

18                (1) a judicial district where any defendant resides, if all defendants
reside in the same State, (2) a judicial district in which a substantial
part of the events or omissions giving rise to the claim occurred, or
19                a substantial part of property that is the subject of the action is
situated, or (3) a judicial district in which any defendant is subject
20                to personal jurisdiction at the time the action is commenced, if there
is no district in which the action may otherwise be brought.
21

22    28 U.S.C. § 1391(a).

23    In determining whether venue is proper under 28 U.S.C. § 1391(a)(2), "the substantiality

24    of the operative events is determined by assessment of their ramifications for efficient conduct of

25    the suit . . ."  *Lamont v. Haig*, 590 F.2d 1124, 1134-35 (D.C. Cir. 1978), *quoted in Myers v.*

26    *Bennett Law Offices*, 238 F.3d 1068, 1075-76 (9th Cir. 2001).  The only relevant events are those

27    that directly gave rise to the claims.  *Vitria Tech., Inc. v. Cincinnati Ins. Co.*, No. C 05-01951 JW,

28    2005 WL 2431192, *3 (N.D. Cal. Sept. 30, 2005) (Ware, J.) (citing *Jenkins Brick Co. v. Bremer*,

1   321 F.3d 1366, 1372 (11th Cir. 2003)).  In a contract action, these events include where the

2   contract negotiations took place, where the contract was executed, where performance or breach

3   occurred, and where the parties were engaged in business.  *Id.*  Although relevant, "[m]ere

4   execution of a contract does not weigh heavily in determining which forum state is more

5   convenient or proper."  *Id.*  The place of intended performance is key.  *See Decker Coal Co. v.*

6   *Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986).  In determining the location of

7   performance or breach, the court focuses on the activities of defendants rather than those of

8   plaintiff.  *Jenkins Brick Co.*, 321 F.3d at 1371-72; *accord Makinen v. Little*, No. Civ. S-06-01887

9   FCD, 2006 WL 3437529, at *3 (E.D. Cal. Nov. 27, 2006).

10         Here, the Northern District of California is an improper venue for this action, because it

11  does not qualify under any of the three grounds for venue when jurisdiction is based solely on

12  diversity.  28 U.S.C. § 1391(a).  First, Defendant Clark is a resident of Michigan.  Compl. ¶ 2;

13  Clark Decl. ¶ 12.  National City Bank is headquartered in Cleveland.  DeWerth Decl. ¶ 4.  All

14  defendants do not reside in California, so venue is improper under § 1391(a)(1).

15         Second, a substantial part of the events giving rise to this action did not occur in this

16  district.  Nothing in the Complaint alleges that any events giving rise to this action occurred in

17  this district.  *See*, *e.g.*, Compl. ¶¶ 19-22, Exs. A, B.  All the relevant activities of defendants

18  occurred outside of this district:

19         • **Negotiations:**  The Participation Agreement between Clark and Plaintiff was

20         negotiated in Grand Rapids and Texas.  Clark Decl. ¶¶ 5-8.  The "Escrow

21         Agreement" between Clark and National City Bank was negotiated in Grand

22         Rapids and Cleveland.  *Id.* ¶ 9; DeWerth Decl. ¶ 6.

23         • **Signing:**  Clark signed both agreements in Grand Rapids.  Clark Decl. ¶¶ 4, 9.

24         National City Bank signed the "Escrow Agreement" in Cleveland.  DeWerth Decl.

25         ¶ 12, Ex. 2.  It is unclear where Plaintiff signed the Participation Agreement.

26         • **Performance:**  Clark's performance under the Participation Agreement attached to

27         the Complaint was to "arrange for the establishment of the Transaction" by

28         causing Treasury Bills to be delivered to the same Cleveland bank account, and to

1    return profits to Plaintiff from the same account.  Compl., Ex. A at ¶¶ 1, 3.

2    Plaintiff's performance under the same agreement consisted of wiring funds to a

3    National City Bank account in Cleveland.  *Id.* ¶ 3  All of National City Bank's

4    performance under the "Escrow Agreement" was to take place in Cleveland.

5    DeWerth Decl., Ex. 2 at Ex. B.

6    • **Breach:**  All of the breaches alleged by Plaintiff in her complaint occurred in

7    Grand Rapids or Ohio.  Clark is alleged to have made misrepresentations, failed to

8    deliver profits, and engaged in a fraudulent scheme to deprive Plaintiff of her

9    principal.  Compl. ¶¶ 49, 56, 76.  All of these alleged breaches would have taken

10   place in Grand Rapids.  Compl. ¶¶ 4, 31, Ex. C; Clark Decl. ¶ 9.  National City

11   Bank's alleged breaches—failing to investigate suspicious escrow instructions and

12   failing to follow those instructions—would have taken place in Cleveland.

13   DeWerth Decl., ¶¶ 6, 22, 23.

14   • **Place of Business:**  Clark is engaged in business in Grand Rapids, Michigan.

15   Clark Decl. ¶ 2-3.  National City Bank is engaged in business in Cleveland, Ohio.

16   DeWerth Decl. ¶ 4.

17   In sum, the vast majority of the events that gave rise to Plaintiff's claims occurred outside of this

18   district.  As a result, the majority of witnesses and records are also located outside of this district.

19   *See*, *e.g.*, Clark Decl. ¶¶ 8, 11; DeWerth Decl., ¶ 22-23.  The only events or omissions that *may*

20   have taken place in this district—Plaintiff's communications with Clark regarding the investment

21   and her signing of one of the two contracts at issue—were only a small part of the chain of events

22   or omissions giving rise to the claims at issue.

23   Finally, venue is not proper under § 1391(a)(3) because this action may have been brought

24   in the Northern District of Ohio, where a substantial part of the events giving rise to the claims

25   occurred.  Plaintiff and Clark agreed to have National City Bank act as the escrow agent in

26   Cleveland.  Compl. Ex. B, ¶ 8; Clark Decl. ¶ 9.  Plaintiff caused $1,001,500 to be deposited at

27   National City Bank in Cleveland.  Compl. ¶ 22; DeWerth Decl. ¶ 11.  According to the version of

28   the Participation Agreement attached to the Complaint, Clark agreed to deposit United States

1   Treasury Bills in a National City Bank account in Cleveland.  Compl., Ex. A.  Most importantly,

2   the contemplated performance (sending money to Plaintiff) was to occur in Cleveland, and the

3   alleged breach (failing to send money to Plaintiff) occurred in Cleveland.  *See* Compl. Ex. A;

4   DeWerth Decl. ¶ 5; *see also* Compl. ¶¶ 27, 33.  All funds and securities subject to the transaction

5   were contractually obligated to move through National City Bank in Cleveland.  Compl., Ex. B.

6   In sum, the Northern District of Ohio was the focal point of the entire agreement.

7   **C.    Even if Venue Were Proper in this District, the Action Should Be Transferred for the Convenience of the Parties and the Witnesses and in the Interests of Justice.**

8

9   **1.    *Legal Standard***

10  If an action is brought in the correct district or division, "[f]or the convenience of parties

11  and witnesses, in the interest of justice, a district court may transfer any civil action to any other

12  district or division where it might have been brought."  28 U.S.C. § 1404(a).  To transfer an

13  action under section 1404(a), the Court must make two findings: (1) that the transferee district is

14  one in which the action might have been brought, and (2) that a transfer would be convenient and

15  in the interest of justice.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

16  **2.    *Plaintiff Might Have Brought this Action in the Northern District of Ohio.***

17  Under section 1404(a), a district court may transfer an action to any district in which

18  plaintiffs might have brought the action.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *A.J.*

19  *Indus., Inc. v. Dist. Ct.*, 503 F.2d 384, 386 (9th Cir. 1974).  The transferee court must have

20  personal jurisdiction over the defendants and subject matter jurisdiction over the plaintiff's

21  claims, and venue must be proper.  *Hoffman*, 363 U.S. at 343-44.

22  Plaintiff could have brought this claim in the Northern District of Ohio.  National City

23  Bank does not contest that it is subject to personal jurisdiction in Ohio for purposes of this action.

24  Clark agreed to waive all objections to personal jurisdiction in his agreement with National City

25  Bank.[3]  Compl. Ex. B, ¶ 12; DeWerth Decl. Ex. 2, ¶ 12.  Venue is proper in the Northern District

26

27  _____

    [3] Even if Clark had not waived objections to personal jurisdiction in Ohio, by agreeing to
    the forum selection clause (without the waiver), he subjected himself to personal jurisdiction in
28  Ohio.  *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007).

1    of Ohio because a substantial part of the events giving rise to the action occurred there.  28 U.S.C.

2    1391(a)(2); *see also supra* at pp. 12-13.

3         **3.     *Transferring this Action to the Northern District of Ohio is Convenient and in
             the Interest of Justice.***

4

5         "Analysis of suitability for transfer involves private factors, such as the ease of access to

6    proof, costs, availability of compulsory process for unwilling witnesses, and other practical

7    considerations for an efficient and expeditious trial."  *Ellis v. Costco Wholesale Corp.*, 372 F.

8    Supp. 2d 530, 536 (N.D. Cal. 2005).  The Northern District of California has enumerated ten

9    factors to consider when deciding a motion to transfer in a contract action:

10                 (1) the location where the relevant agreements were negotiated and
                 executed; (2) the state that is most familiar with the governing law;
11                 (3) the plaintiff's choice of forum; (4) the respective parties'
                 contacts with the forum; (5) the contact relating to the plaintiff's
12                 cause of action in the chosen forum; (6) the differences in the costs
                 of litigation in the two forums; (7) the availability of compulsory
13                 process to compel attendance of unwilling non-party witnesses; (8)
                 the ease of access to sources of proof; (9) the presence of a forum
14                 selection clause; and (10) the relevant public policy of the forum
15                 state.

16    *Hsu v. VTEX Energy, Inc.*, No. C06-07688 JW, 2007 WL 1232056, at *2 (N.D. Cal. Apr. 26,

17    2007) (Ware, J.) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)).

18         Taken together, these factors weigh heavily in favor of a transfer of this action to the

19    Northern District of Ohio.  Plaintiff claims to be a third-party beneficiary of the contract between

20    National City Bank and Clark, which National City Bank negotiated and executed in Cleveland.

21    DeWerth Decl., ¶ 5.  That contract contains a clause providing that Ohio law shall govern

22    (Compl. Ex. B, ¶ 10; DeWerth Decl. Ex. 2, ¶ 10) and, by virtue of its location, the Northern

23    District of Ohio will almost certainly be more familiar with Ohio law.  In addition, unlike the

24    Plaintiff's choice of forum, all parties had substantial contacts with the Northern District of Ohio

25    because all funds and securities subject to the transaction were contractually obligated to move

26    through National City Bank in Cleveland.  *See* Compl. Ex. B.  Indeed, Cleveland was the focal

27    point of the transactions that form the basis of Plaintiff's claims.

28

1    It will also be more convenient and more efficient to litigate this action in the Northern

2  District of Ohio.  All National City Bank witnesses who were directly involved in the transactions

3  at issue reside in Cleveland, Ohio and the immediately surrounding area.  DeWerth Decl. ¶ 23;

4  Penko Decl. ¶ 4.  Likewise, all National City Bank records regarding the transactions are located

5  in Cleveland.  DeWerth Decl. ¶ 22  Relative court congestion also weighs in favor of transfer.

6  *See Jaco Envtl. Inc. v. Appliance Recycling Ctrs. Of Am. Inc.*, No. C 06-06601 JSW, 2007 WL

7  951274, at *5 (N.D. Cal. Mar. 27, 2007).  In 2007, this district had 569 filings per judgeship, and

8  the median time to trial was 24.9 months, whereas the Northern District of Ohio had only 450

9  filings per judgeship and the median time to trial was 20 months.  *See Federal Court*

10  *Management Statistics, District Courts* (2007), at http://www.uscourts.gov/cgi-bin/cmsd2007.pl.

11    Finally, the two contracts that underlie Plaintiff's claims both contain forum selection

12  clauses.  Compl., Ex. A at ¶ 7; Ex. B at ¶ 12.  Plaintiff bargained away her ability to litigate in

13  California, and Clark bargained away the Clark defendants' ability to litigate in Michigan in favor

14  of the Northern District of Ohio.  This, together with the other factors, make a transfer to the

15  Northern District of Ohio convenient and in the interests of justice.

16
17
**D.    The Third and Fourth Causes of Action Against National City Bank Fail to State a Claim Upon Which Relief Can Be Granted.**

18    In the Third and Fourth Causes of Action, Plaintiff alleges that National City Bank

19  violated a duty of care by "negligently failing to question Clark or investigate the suspicious

20  Escrow Instructions."  Compl. ¶¶ 61, 68.  No such duty exists, however, under Ohio or California

21  law, and these causes of action against National City Bank therefore fail to state a claim upon

22  which relief can be granted.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) ("Rule

23  12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law . . . .  [I]f

24  as a matter of law it is clear that no relief could be granted under any set of facts that could be

25  proved consistent with the allegations, a claim must be dismissed . . ." (internal quotation marks

26  and citations omitted)).

27
28

1        Plaintiff's causes of action against National City Bank are governed by Ohio law, Compl.

2   Ex. B., ¶ 10; DeWerth Decl. Ex. 2, ¶ 10, which limits an escrow agent's duties.  The only duty an

3   escrow agent owes to the parties is to carry out the terms of the escrow agreement agreed on by

4   the parties.  *Hurst v. Enter. Title Agency, Inc.*, 157 Ohio App. 3d 133, 145 (2004); *Pippin v. Kern-*

5   *Ward Bldg. Co.*, 8 Ohio App. 3d 196, 198 (1982).  If California law applied to this action, the

6   result would be the same:  "It is generally held that no liability attaches to the escrow holder for

7   his failure to do something not required by the terms of the escrow or for a loss incurred while

8   obediently following his escrow instructions."  *Lee v. Title Ins. & Trust Co.*, 264 Cal. App. 2d

9   160, 163 (1968).  Absent clear evidence of fraud, an escrow agent's duties are limited to carrying

10  out the escrow instructions.  *Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title Co.*, 27 Cal. 4th

11  705, 711 (2002) (citing *Lee*); *Gordon v. D & G Escrow Corp.*, 48 Cal. App. 3d 616, 622 (1975)

12  (same).

13       In *Lee*, the California Court of Appeal discussed the policy reasons behind not requiring

14  escrow agents to disclose merely "suspicious" information about a transaction.  264 Cal. App. 2d

15  at 163.  An escrow agent owes duties to both parties to the escrow, and a duty to disclose

16  suspicions would inevitably expose the escrow agent to liability.  *Id.*  "If [the escrow agent]

17  concealed his knowledge he would risk suit.  If he discloses and the information is inaccurate, he

18  may be sued by all parties to the escrow for interfering with their contract."  *Id.*  For this reason,

19  unless the escrow agent possesses *clear evidence of fraud*, his or her duties are limited to carrying

20  out the escrow instructions.

21       In the Third and Fourth Causes of Action, Plaintiff does not allege that National City

22  Bank failed to carry out any escrow instructions.  Instead, Plaintiff alleges that National City

23  Bank did not question Clark about the instructions or investigate the instructions before carrying

24  them out.  Compl. ¶¶ 61, 68.  Nor does Plaintiff allege that National City Bank possessed clear

25  evidence of fraud.  Rather, Plaintiff faults National City Bank for failing to raise concerns about

26  "suspicious" escrow instructions.  *Id.*  These allegations do not state a claim upon which relief

27  can be granted, and the Third and Fourth Causes of Action against National City Bank must be

28  dismissed.

1

## IV.    <u>CONCLUSION</u>

2          For the foregoing reasons, the motion to dismiss or transfer venue to the Northern District

3   of Ohio should be granted.  The motion to dismiss the Third and Fourth Causes of Action for

4   failure to state a claim should also be granted.

5

6   Dated: July 3, 2008                                    Respectfully submitted,

                                                          JONES DAY
7

8
                                                          By:   /S/ Roderick A. McLeod
9                                                               Roderick A. McLeod

10                                                        Counsel for Defendant
                                                         NATIONAL CITY BANK
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Appendix A

Westlaw.

**R.C. § 2305.06**

**C**BALDWIN'S OHIO REVISED CODE ANNOTATED
TITLE XXIII. COURTS--COMMON PLEAS
CHAPTER 2305. JURISDICTION; LIMITATION OF ACTIONS
LIMITATIONS--CONTRACTS
→ **2305.06 Contract in writing**

Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued.

Current through 2008 Files 1 to 119, & 121 of the 127th GA (2007-2008), apv. by 6/23/08, and filed with the Secretary of State by 6/23/08.

Copr. © 2008 Thomson Reuters/West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

**R.C. § 2305.09**


▷BALDWIN'S OHIO REVISED CODE ANNOTATED
TITLE XXIII. COURTS--COMMON PLEAS
CHAPTER 2305. JURISDICTION; LIMITATION OF ACTIONS
LIMITATIONS--TORTS
→**2305.09 Four years; certain torts (later effective date)**

<Note: See also version(s) of this section with earlier effective date(s).>

Except as provided for in division (C) of this section, an action for any of the following causes shall be brought within four years after the cause thereof accrued:

(A) For trespassing upon real property;

(B) For the recovery of personal property, or for taking or detaining it;

(C) For relief on the ground of fraud, except when the cause of action is a violation of section 2913.49 of the Revised Code, in which case the action shall be brought within five years after the cause thereof accrued;

(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code;

(E) For relief on the grounds of a physical or regulatory taking of real property.

If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.

Current through 2008 Files 1 to 119, & 121 of the 127th GA (2007-2008), apv. by 6/23/08, and filed with the Secretary of State by 6/23/08.

Copr. © 2008 Thomson Reuters/West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.