1  Roderick A. McLeod (State Bar No. 104694)
Peter E. Davids (State Bar No. 229339)
2  JONES DAY
555 California Street, 26th Floor
3  San Francisco, CA  94104-1500
rmcleod@jonesday.com
4  pdavids@jonesday.com
Telephone:    (415) 626-3939
5  Facsimile:    (415) 875-5700

6  Attorneys for Defendant
NATIONAL CITY BANK

7

8               UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

| 12 | CHAU PAPATHEODOROU, an individual, | Case No. C 08-01905 JW |
|----|----|----|
| 13 | Plaintiff, | DECLARATION OF DAWN DEWERTH IN SUPPORT OF |
| 14 | v. | DEFENDANT NATIONAL CITY BANK'S MOTION TO TRANSFER OR |
| 15 | ROGER CLARK, an individual; CRM INVESTORS CORPORATION, a Michigan | DISMISS FOR IMPROPER VENUE; AND TO DISMISS PURSUANT TO |
| 16 | corporation; FORTRESS GROUP USA, LLC, a Michigan limited liability company; | FRCP 12(b)(6) |
| 17 | NATIONAL CITY BANK, an Ohio corporation, and DOES 1 through 50, | Date:         September 15, 2008 |
| 18 | inclusive, | Time:         9:00 a.m.<br>Dept.:        Courtroom 8 |
| 19 | Defendants. | Judge:        Hon. James Ware |

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAWN DEWERTH

I, Dawn DeWerth, declare under penalty of perjury as follows:

1.    I am an employee of National City Bank, a defendant in this action. I have personal knowledge of the facts set forth below and, if called and sworn as a witness, I could and would testify competently to them.

2.    This declaration is submitted in support of National City Bank's "Motion to Transfer or Dismiss for Improper Venue; and to Dismiss Pursuant to FRCP 12(b)(6)."

3.    I have been employed at National City Bank since 1997, and I have worked as a trust officer since 1999. My responsibilities include document review, administration of escrow accounts, and performance of escrow instructions. Beginning in May 2007, I was promoted to my current position of Assistant Vice President.

4.    National City Bank is a national banking association headquartered in Cleveland, Ohio.

5.    It is my understanding that this legal action arises out of a participation agreement between Plaintiff Chau Papatheodorou and Defendant Fortress Group USA LLC, known as the "Fortress #202 Participation." I administered the National City Bank account Clark used to hold Fortress client funds pending direction from Fortress (account #01000103251) ("the Account"). The Account is located in Cleveland, Ohio, and I performed all activities in connection with the Account in Cleveland.

6.    To the best of my recollection, I have never met Defendant Roger Clark in person and all of my interchanges with him (telephone calls, e-mails, correspondence) were between National City Bank's office in Cleveland, Ohio and Clark's office in Grand Rapids, Michigan.

7.    My first contact with Clark was in the beginning of 2006. It is my understanding that Clark was an existing retail client of a National City Bank branch in Grand Rapids, Michigan, and that he told a branch employee that he wanted to open an account at the bank. The branch employee referred Clark to me.

8.      I spoke with Clark by telephone in February 2006.  It was my understanding that his former escrow agent was retiring and that he needed to open an account to hold Fortress client funds until Fortress issued instructions regarding the funds.

9.      Clark e-mailed me a draft agreement on February 14, 2006, which became the subject of back-and-forth but infrequent discussions between then and mid-April 2006.  Although Clark entitled the document "Escrow Agreement," the Account would function more like a custody account:  money would arrive in the Account and be held until Fortress instructed National City Bank what to do with the funds.  The Bank's client was Fortress.  Clark opened the Account, provided documents showing that he was the managing member of Fortress, and was the sole representative of Fortress with whom I dealt regarding the Account.  Fortress, through Clark, was the only signatory on the Account.  I never understood that any third party (as was typical in traditional escrow accounts) would be signing the "Escrow Agreement."

10.     I, along with other National City Bank account administrators, signed several of these agreements with Fortress between April 2006 and July 2007.  Fortress, by Clark, was the only signatory on these other agreements.

11.     On August 15, 2007, National City Bank received a wire transfer in the amount of $1,001,500 from an individual named Chau Papatheodorou referencing (i) the Account and (ii) "Fortress Client #202 Participation."  I did not know anything about this transfer and had never heard of Papatheodorou prior to receipt of this wire transfer.  I immediately sent Clark an e-mail message about the deposit.  After the bank's close of business that day, Clark replied by e-mail that Papatheodorou was not supposed to fund the Account until the following day and that was why he had not yet sent over the paperwork.  Clark said the reference would be "Fortress #202 Participation."  A true and correct copy of this e-mail chain is attached as Exhibit 1 to this declaration.

12.     On August 16, 2007, I received from Clark for the first time the "Escrow Agreement" relating to the "Fortress #202 Participation" ("the Agreement").  I signed the Agreement on the day I received it and returned it to Clark.  A true and correct copy of the

1    Agreement is attached as Exhibit 2 to this declaration.  This is the only Agreement about the

2    "escrow account" that I ever received from Clark.

3        13.    I have reviewed the Complaint in this action and its exhibits.  Exhibits A and B to

4    the "Escrow Agreement" attached to the Complaint are not the same as the Exhibits A and B that

5    I received from Clark.  Among other things, the exhibits I received do not require that the money

6    be held in the Account until the deposit of equivalent value of United States Treasury Bills.  In

7    fact, the versions of Exhibits A and B that were attached to the Agreement sent to me by Clark

8    made no mention of United States Treasury Bills at all.

9        14.    Clark used the Account to hold funds received from other clients as well as from

10   Papatheodorou.  From time to time, Clark instructed me to transfer funds from the Account,

11   including one transfer to another client's bank account in California, but Clark never instructed

12   me to transfer funds to California or to Papatheodorou in connection with the Agreement.  I

13   transferred funds in accordance with Exhibit B to the Agreement, which gave Clark the authority

14   to direct these transfers.

15       15.    The very first communication I had with Papatheodorou occurred on January 18,

16   2008, when she copied me on an e-mail message to Clark.  In the e-mail message, Papatheodorou

17   asked Clark to liquidate "Treasury Bills/Bonds" in an amount equal to $1 million.  A true and

18   correct copy of the e-mail is attached as Exhibit 3 to this declaration.

19       16.    On January 21, 2008, Clark sent me an e-mail in which he stated that

20   Papatheodorou should not have contacted me and that he was handling the situation.  A true and

21   correct copy of the e-mail is attached as Exhibit 4 to this declaration.

22       17.    On the evening of January 23, 2008, Papatheodorou sent another e-mail message

23   to Clark on which I was copied, asking for acknowledgment of receipt of her January 18, 2008

24   request.  I did not respond to Papatheodorou because I had never had any dealings with her.  The

25   following morning, I forwarded Papatheodorou's e-mail message to Clark to confirm that he had

26   spoken to his client.  Clark replied that he had instructed her not to contact me and he would

27   speak to her again.  A true and correct copy of this e-mail chain is attached as Exhibit 5 to this

28   declaration.

18.    On January 25, 2008, I received a letter from Papatheodorou.  The letter was addressed to Clark and to me.  In it, Papatheodorou described some of her communications with Clark and attached an e-mail message from Clark to Papatheodorou.  A true and correct copy of the letter is attached as Exhibit 6 to this declaration.

19.    Prior to the communications from Papatheodorou beginning on January 18, 2008, I was unaware of and not party to any discussions, additional agreements, or promises between Clark and Papatheodorou regarding her money transfer into the Account.  All I knew was that an investment client of Clark had transferred money into the Account.  National City Bank froze the remaining assets in the Account after receipt of Papatheodorou's January 25, 2008 letter.

20.    I have never telephoned or spoken to Papatheodorou.  I have never written to her.

21.    I have never traveled to California or Michigan in connection with the administration of the Account.

22.    I have more than ten years of experience with National City Bank's recordkeeping procedures concerning escrow accounts.  All documents the Bank possesses regarding the Account are located in Cleveland, Ohio.  This includes, among other things, hard copies of agreements, correspondence and facsimiles, electronic documents reflecting deposits and withdrawals from the Account, e-mail servers, and original accounting records.

23.    A number of National City Bank employees have had some involvement with the establishment and administration of the Account.  I have worked with these employees for a number of years.  Each of them resides in the Cleveland, Ohio area except for one, who resides in Grand Rapids, Michigan.  The Michigan employee had no responsibilities with regard to the Account, his only involvement being referring Clark to me.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1      24.    National City Bank did not enter into any agreement or contract with

2  Papatheodorou relating to the Account, and did not solicit business from Papatheodorou.

3      I declare under penalty of perjury under the laws of the United States of America that the

4  foregoing is true and correct of my personal knowledge.

5      Executed on July 2, 2008, at Cleveland, Ohio.

Dawn DeWerth

SFI-585497v3

Declaration of Dawn DeWerth
Case No. C 08-01905 JW

Exhibit 1

## Dewerth, Dawn (Allegiant Group)

**From:**     Dewerth, Dawn (Allegiant Group)
**Sent:**     Thursday, August 16, 2007 4:45 PM
**To:**       'Roger Clark'
**Subject:** RE: INCOMING WIRE

Your request to credit the checking came at cut off. It will be processed and available tomorrow in the checking account noted in your instructions.

---

**From:** Roger Clark [mailto:roger@crm-investors.com]
**Sent:** Wednesday, August 15, 2007 6:57 PM
**To:** Dewerth, Dawn (Allegiant Group)
**Subject:** RE: INCOMING WIRE

Thank you. She was not to fund the escrow until tomorrow so I have not sent down the paperwork to you. For your information the reference will be "Fortress #202 Participation".

There should be $180,000 or $280,000 also arriving that will go with Fortress #201 Participation. We will be sending new paperwork on it since we are changing the investment program for our clients due to the problem we had with the T-Bill provider.

Roger

**From:** Dewerth, Dawn (Allegiant Group) [mailto:Dawn.DeWerth@Allegiantgroup.com]
**Sent:** Wednesday, August 15, 2007 3:58 PM
**To:** Roger Clark
**Subject:** INCOMING WIRE

$1,001,500 CAME IN REFERENCING CHAU DO PAPA THE ODOROU.

IT WILL SHOW AS A DEPOSIT TODAY.

***Thank you,***

***Dawn DeWerth, AVP***

***Trust Administration***

***Phone: 216.222.9225***

***Fax: 216.222.9841***

***National City Bank***

2/8/2008

*c/o Allegiant Institutional Services*

*200 Public Square,  Fifth Floor*

*Cleveland Ohio  44114*

```
--------------------------------------------------------------------------------
***National City made the following annotations
--------------------------------------------------------------------------------
Allegiant Asset Management Group retains both outgoing and incoming
electronic mail, and such e-mail may be subject to internal
and external review.  E-mail correspondence cannot be guaranteed
to be secure, timely or error-free.  Allegiant Asset Management
Group recommends that you do not send confidential information
to us via E-mail, including account numbers, social security
numbers or any person identification numbers.  This communication
is a confidential and proprietary business communication.  It is
intended solely for the use of the designated recipient(s).  If you
have received this communication in error, please contact the sender
and delete this communication.
================================================================================
```

Exhibit 2

## ESCROW AGREEMENT

THIS AGREEMENT is made on the 16th day of August, 2007, by and between Fortress Group USA, LLC, a corporation organized and existing under the laws of the State of Michigan (hereinafter "Fortress") and National City Bank (hereafter "Escrow Agent").

## PRELIMINARY STATEMENT

A.   Fortress and Chau Papatheodorou (hereinafter the "Client") have executed a Participation Agreement (hereinafter the "Contract")(see Exhibit "A") dated August 16, 2007, so that the Client may participate in an investment transaction pursuant to which the Client has agreed to deposit the amount of One Million One Thousand Five Hundred United States Dollars (US$1,001,500.00) with the Escrow Agent to be held in accordance with the terms of the Contract and this Agreement.

B.   Fortress desires to have National City Bank act as Escrow Agent and National City Bank consents to so act.

NOW, THEREFORE, in consideration of mutual promises contained herein, and other good and valuable consideration the receipt and sufficiency of which is acknowledged, the parties agree as follow:

1.   <u>Incorporation of Preliminary Statement and Exhibits</u>. The Preliminary Statement set out above and any exhibits identified in and attached hereto are incorporated in this Agreement in their entirety as if fully set out in this Agreement.

2.   <u>Escrow Fund</u>.  On the date of this Agreement Fortress shall cause a deposit to be made with Escrow Agent by the Client, cash in the amount of One Million United States Dollars (US$1,000,000.00) (hereinafter "Escrow Fund") plus One Thousand Five Hundred (US$1,500.00) for the escrow fee.  Escrow Agent acknowledges receipt of the Escrow Fund. The Escrow Agent accepts the deposit by wire transfer in US Dollars and agrees to hold the Escrow Fund on the terms and subject to the conditions of this Agreement.  The Escrow Fund from the Client shall be deposited in an account and duly recorded as a deposit for Fortress #202 Participation.

3.   <u>Investment of Fund</u>. Fortress hereby directs the Escrow Agent to invest the Escrow Fund in the Allegiant Treasury Money Market Fund, which the Escrow Agent or an Affiliate serves as investment advisor and receives a fee.  During the life of this Agreement, Fortress shall be deemed owner of any income earned thereon for tax reporting purposes.

4.   <u>Release of Escrow Fund</u>.  The Escrow Agent shall release the Escrow Fund only:

a.   Upon written instructions of Fortress (see Exhibit "B") provided to the Escrow Agent directing the release of the Escrow Fund and any specified amount of

1

income earned thereon less any additional costs (if applicable - for international wire transmissions) in the manner prescribed in such written instructions.

b.   The final, nonappealable order of a court having jurisdiction in this matter under the terms and provisions of the Contract and this Agreement.

5.   <u>Compensation</u>.  The Escrow Agent shall be entitled to reasonable compensation for its services under this Agreement in the amount of One Thousand Five Hundred Dollars ($1,500.00) based on a per year and per Investment Participation Agreement.  Further, Fortress agrees to pay this service fee from and immediately upon receipt by the Escrow Agent of the Escrow Fund as reimbursement of the Escrow Agents legal and administrative costs.

6.   <u>Resignation of Escrow Agent</u>.  The Escrow Agent may resign and be discharged from its duties hereunder at any time by giving ten (10) days prior written notice of such resignation to Fortress specifying a date when such resignation shall take effect.  Upon such notice, a successor escrow agent shall be appointed by Fortress and such successor escrow agent shall become Escrow Agent under this Agreement upon the resignation date specified in such notice.  If Fortress is unable to assign a successor escrow agent within ten (10) days after such notice, Escrow Agent shall be entitled to appoint the successor.  Escrow Agent may at its sole discretion deliver to a court of competent jurisdiction the Escrow Fund, income earned thereon and any related documents if a successor escrow agent has not been appointed within thirty (30) days of the effective date of such resignation.  Fortress may substitute a successor escrow agent by giving ten (10) days prior written notice to Escrow Agent.

7.   <u>Liability of Escrow Agent</u>.

a.   Escrow Agent shall have no liability for any action that is taken or omitted by it in good faith.  Escrow Agent shall be entitled to rely upon advice of counsel in acting under this Agreement.

b.   Fortress agrees to defend, indemnify and hold harmless Escrow Agent from, against and in respect to; i) any and all liabilities, losses, damages, deficiencies or expenses resulting from any action taken in good faith by Escrow Agent and; ii) any and all actions, suits, proceedings, claims, demands, assessments, judgements, costs and expenses (including the reasonable fees and expenses of legal counsel) related to any of the foregoing, except to the extent that any of the foregoing are incurred by Escrow Agent as a result of its own willful misconduct or gross negligence.

8.   <u>Notices</u>.  Any notice, request or other document to be given to any of the parties by any other party shall be in writing and shall be personally delivered or sent; i) by same day, overnight courier or certified mail, return receipt requested, postage pre-paid; ii) facsimile transmission; or iii) electronic mail transmission, addressed to the party at the addresses identified below or addressed to such other address as may be given in writing by any party to the other.

2

If to Fortress, at:    Mr. Roger Clark
                       Fortress Group USA, LLC
                       1428 44th St. SW, Suite E
                       Grand Rapids, MI 49509
                       616-530-9864, fax 616-530-9870
                       roger@crm-investors.com

If to Escrow Agent:    National City Bank
                       c/o Allegiant Institutional Services
                       Dawn DeWerth
                       200 Public Square 5th Floor
                       Cleveland, OH 44114
                       (216) 222-9225, fax (216) 222-7044
                       Dawn.Dewerth@allegiantgroup.com

9.    <u>Binding Effect</u>. All of the terms, covenants and conditions of this Agreement shall be binding upon and inure to the benefit of, and be enforceable by the parties to this Agreement and their respective successors, heirs, beneficiaries, personal representatives, trustees, executors, administrators and permitted assigns.

10.   <u>Governing Law</u>. This Agreement shall be construed, interpreted and governed in all respects by the laws of the State of Ohio.

11.   <u>Entire Agreement</u>. This Agreement contains the entire agreement and supersedes all prior agreements and undertakings, both written and oral, among the parties with respect to the Escrow Fund and earnings thereon.

12.   <u>Jurisdiction</u>. The parties agree that any suit, action or proceeding with respect to this Agreement shall be brought within Cuyahoga County, Ohio and do waive any question of personal jurisdiction or venue for the purpose of carrying out this provision.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

"Fortress"
Fortress Group USA, LLC

By: _____
    Roger L. Clark, Managing Member

"Escrow Agent"
National City Bank

By: _____
    Dawn DeWerth, Assistant Vice President

3

# EXHIBIT "A"

## Participation Agreement

This PARTICIPATION AGREEMENT (the "Participation Agreement") referred hereinafter as Exhibit "A", shall be effective from the date hereof and is entered into this 16th day of August, 2007, by and between:

FORTRESS GROUP USA, LLC, (hereinafter "Fortress"), 1428 44th St. SW, Suite E, Grand Rapids, MI 49509, 616-530-9864, fax 616-530-9870, duly represented by Mr. Roger L. Clark, and Chau Papatheodorou (hereinafter "Client"), 2317 St. Francis Drive, Palo Alto, CA 94303, (650) 804-1222, fax (650) 494-1438.

1.  Client wishes to acquire participation in a Private Placement Transaction (the "Transaction") in the amount of One Million United States Dollars (US$1,000,000.00)("Transaction Amount") hereinafter referred to as the ("Fortress #202 Participation"), and Fortress agrees to arrange for the establishment of the Transaction.

2.  Client has further advised Fortress that Client has a complete understanding of the matter pertaining to the above Private Placement Transaction and has relied solely upon his/her/its own legal, business, investment and financial advisors with respect to same.

3.  Client agrees to wire transfer funds in the amount of One Million United States Dollars (US$1,000,000.00) plus One Thousand Five Hundred United States Dollars (US$1,500.00), to pay the escrow fee, to National City Bank (the "Escrow Agent") under certain terms of the Escrow Agreement dated August 16, 2007, ABA # 041000124, Account # 2171150005490 with further credit to Escrow Account # 01000103251. These funds less the Escrow Fee ("Escrow Fund") shall be held by the Escrow Agent for the sole benefit of Client, until instructed to transfer the Escrow Fund into a non-depletion account at the investment bank. At thirty (30) day intervals after delivery of the Escrow Fund into the investment bank, a minimum profit of Twenty Percent (20%) shall be deposited to the Client Escrow Account and disbursed by the Escrow Agent per the disbursement schedule contained in the Escrow Release Instructions, Exhibit "B" herein and shall form an integral part of the Agreement. At the end of the term of Fifteen (15) months, the Escrow Fund will be returned to the Escrow Account and immediately returned to the Client.

4.  Client guarantees that there will not be any liability incurred from any brokerage, finders, investors, consultants or similar fees in connection with the Fortress #202 Participation.

5.     Fortress agrees that, if the first profits of Twenty Percent (20%) are not delivered into the Client Escrow Account within Thirty (30) international banking days after escrow funds are received, the escrow fund will be immediately reclaimed from the investment bank and returned to Client by wire transfer without protest, offset or deduction whatsoever except for normal wire fee.

6.     Client has made full and complete disclosure to third parties, if any, who have or may have supplied funds which have been or will be deposited into escrow, that said funds are intended to be employed for a certain Private Placement Transaction. Client has received from his/her/its own advisors and fully disclosed to all third parties the risks involved in this Participation Agreement and with respect to the Fortress #202 Participation. In the event of any litigation relating to this Participation Agreement, the losing party or parties agree to pay all of the costs and expenses and reasonable attorney's fees incurred both at trial and on appeal of the prevailing party or parties. Client hereby agrees to indemnify and defend Fortress, the Escrow Agent and Fidelity Investments under any and all circumstances from any and all claims arising as a result of any brokerage, finder or consultant fees with respect to this Participation Agreement or any and all claims arising as a result of any agreements between Fortress and Client and/or Fidelity Investments.

7.     This Participation Agreement may be amended or revised only in writing and signed by both parties hereto. The State of Michigan shall be the legal venue with respect to this Participation Agreement and any action in relation thereto. Electronically transmitted signatures shall have the same standing as an original. Each party hereto warrants that they have full and complete authority to enter into this Agreement and bind their respective person or company. This Participation Agreement may be simultaneously executed in two (2) counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, provided that all such counterparts, in the aggregate, shall contain the legal signatures of all parties to this Participation Agreement. Each of the terms and provisions of this Participation Agreement is to be deemed serviceable in whole or in part and, if any term or provision or the application thereof in any circumstance should be invalid, illegal or unenforceable, the remaining terms and provisions or the application thereof to circumstances other than those as to which it is held invalid, illegal or unenforceable shall not be affected thereby and shall remain in full force and effect.

8.     This Participation Agreement represents the full and complete agreement of the parties with respect to the subject matter of this Participation Agreement and supersedes and replaces any prior understanding and agreement.

THIS SPACE INTENTIONALLY LEFT BLANK

2

IN WITNESS AND FULL AGREEMENT WHEREOF, this document has been executed as of the date first written above, and shall be effective from the date hereof. Each party, by entering their signature below hereby attest fully and without reservation that they have had adequate time to consult with legal, financial, investment and business counsel, have received full and adequate risk disclosure, and agree fully to the terms and conditions of this disclosure and agree fully to the terms and conditions of this Participation Agreement.

Client

By: _____
    Chau Papatheodorou

FORTRESS GROUP USA, LLC

By: _____
    Roger L. Clark, Managing Member

3

<u>EXHIBIT "B"</u>

## <u>IRREVOCABLE INSTRUCTIONS TO RELEASE ESCROW FUND</u>

These irrevocable instructions to the Escrow Agent are made effective on August 16, 2007 by Fortress Group USA, LLC (hereinafter "Fortress").

The following instructions are to the Escrow Agent, National City Bank, covering the release of the Escrow Fund and profit distribution deposited with them in accordance with the Escrow Agreement dated August 16, 2007 and known as Fortress #202 Participation. In accordance with the terms and conditions of the Escrow Agreement, the Escrow Fund and profits shall be released per the following schedules.

### Schedule A

$       1,500   to the Escrow Agent upon receipt of the Escrow Funds
$ 1,000,000   (the Escrow Fund) held for instructions

### Schedule B

The above Escrow Fund shall be held in the Client's Escrow Account until instructed by Roger L. Clark to transfer it to a non-depletion or blocked account at the investment bank until the term of the Fortress #202 Participation shall expire whereupon the Escrow Fund shall be returned to the Escrow Account. At that time, the Escrow Agent shall distribute the escrow funds to the Client of Fortress, namely Chau Papatheodorou per her provided banking coordinates.

### Schedule C

Upon receipt of the profits, Twenty Percent (20%), each month as cash funds, the Escrow Agent shall make the following distribution for the Fortress #202 Participation per there provided banking coordinates:

$180,000    to Chau Papatheodorou per her banking coordinates (90.00%)
$ 20,000    to Vernon L. Maes per his banking coordinates (10.00%)

If Schedule A above and receipt of the first profits cannot be completed within thirty (30) international banking days from receipt of the Escrow Fund, the Escrow Agent shall return the Escrow Fund to the client of Fortress that provided it without protest, offset or deduction whatsoever except normal wire fee, and the Escrow will close.

This is the entire and full instructions to the Escrow Agent in respect to the release of the Escrow Fund and supersedes all prior instructions both written and oral.

1

This is the entire and full instructions to the Escrow Agent in respect to the release of the Escrow Fund and supersedes all prior instructions both written and oral.

IN WITNESS WHEREOF, the parties hereto have executed these instructions to the Escrow Agent as of the date first written above.

Fortress Group USA, LLC


By: _____
    Roger L. Clark, Managing Member

Exhibit 3

## Dewerth, Dawn (Allegiant Group)

**From:**     chaupapa@comcast.net
**Sent:**     Friday, January 18, 2008 4:56 PM
**To:**        roger@crm-investors.com
**Cc:**        ralf.ffm@gmail.com; VMaes26182@aol.com
**Subject:** Request of Liquidation of Treasury Bills/Bonds in Chau's account

**Chau Papatheodorou**
2317 Saint Francis Drive
Palo Alto, CA: 94303
Ph9one: (650) 494-7725
Email: Chaupapa@comcast.net

January 18, 2008

To:     Mr. Roger Clark
Fortress Group USA, LLC
1428 44th St. SW, Suite E
Grand Rapids, MI 49509
Phone: (616) 530 - 9864
Fax:     (616) 530 9870
Email:  roger@crm-investeors.com

cc.     Ms. Dawn DeWerth
National City Bank
c/o Allegiant Instructional Services
200 Public Square 5th Floor
Cleveland OH: 44114
Phone: (216) 222 - 9225
FAX:     (216) 222 7044
Email:  Dawn.Dewerth@allegiantgroup.com

Reference: Fortress #202 Participation under account # 2171150005490 with further credit to
Escrow Account number: 01000103251.

Subject:     Liquidation of Treasury Bills/Bonds

Dear Mr. Clark,

I hereby instruct you to take whatever action may be required to Liquidate the Treasury
Bills/Bonds equal to a net amount of $1,000,000.00 (One Million United States Dollars) for
Cash Funds in the Escrow Account # 202.

Immediately after the fund is liquidated, please wire the total funds (of $1,000,000.00 (One
Million United States Dollars) to my banking coordinate below:

**Bank Name:**        **Washington Mutual Bank: Palo Alto-Midtown Financial Center**
**Bank Address:**     **2846 Middlefield Road, Palo Alto, CA:  94306**

2/8/2008

**Account Name:**            **Chau Do Papatheodorou**
*Bank Routing Number(ABA):*  *322271627*
*Account number:*            *492-118083-4*

**Bank contact:**            **Sammi Ho**
                             **(650) 853 - 2631 (Phone) (650) 321- 2752  (Fax)**
                             **Sammiho@wamu.net (EMAIL)**


You are also instructed to dissolve my participation in the program known as ("Fortress - #202 Participation") by reason of "Non-Performance".

I greatly appreciate if you, and your Escrow Agent, Dawn Dewerth, would **notify me in writing (by email: Chaupapa@comcast.net)** immediately upon the completion of this transaction.

Sincerely Yours,

*Chau Papatheodorou*

Chau Papatheodorou
2317 Saint Francis Drive
Palo Alto, CA: 94303
Ph9one: (650) 494-7725
Email: Chaupapa@comcast.net

2/8/2008

Exhibit 4

## Dewerth, Dawn (Allegiant Group)

| | |
|---|---|
| **From:** | Roger Clark [roger@crm-investors.com] |
| **Sent:** | Monday, January 21, 2008 2:27 PM |
| **To:** | Dewerth, Dawn (Allegiant Group) |
| **Subject:** | Fortress #202 Participation |

Dawn:

I see you received an e-mail from my client Chau Papatheodorou which she should not have done. That has been corrected and I am in the process of handling the situation. I will be in contact with you soon about it.

Thanks.

Roger

Exhibit 5

**Dewerth, Dawn (Allegiant Group)**

| | |
|---|---|
| **From:** | Roger Clark [roger@crm-investors.com] |
| **Sent:** | Thursday, January 24, 2008 1:46 PM |
| **To:** | Dewerth, Dawn (Allegiant Group) |
| **Subject:** | RE: confirmation lrequest of iquidated fund |

I apologize.  I had told them that they are not to contact you but she seems to feel that you should be copied on everything.

I will speak to her again.

Roger

**From:** Dewerth, Dawn (Allegiant Group) [mailto:Dawn.DeWerth@Allegiantgroup.com]
**Sent:** Thursday, January 24, 2008 11:04 AM
**To:** Roger Clark
**Subject:** FW: confirmation lrequest of iquidated fund

Have you called and spoke with this person?   He is requesting acknowledgement of reciept.

**From:** chaupapa@comcast.net [mailto:chaupapa@comcast.net]
**Sent:** Wednesday, January 23, 2008 5:48 PM
**To:** roger@crm-investors.com
**Cc:** VMaes26182@aol.com; Dewerth, Dawn (Allegiant Group)
**Subject:** confirmation lrequest of iquidated fund

Hello Roger,

Just wanted to check in and see if you have received my request to liquidate my Fortress account. I've sent a fax, email along with a register mail request to you and cc. Ms Dawn Dewerth last Friday, Januaray 18th, 2008.

I greatly appreciate if either you and/or Ms. Dewther you send me an email or a voice mail acknowledge that you have recieved the request I would greatly appreciate it. In addition, I would greatly appreciate that you would let me know when I should expect to have the $1M liquidated funds back into my account.

I greatly appreciate your help.


With Warmest Regards

Chau


--
Email: chaupapa@comcast.net
Home (650) 494-7725

6/18/2008

Cell: (650) 804 - 1222
Fax: (650) 494 - 1438
--------------------------------------------------------------------------------
\*\*\*National City made the following annotations
--------------------------------------------------------------------------------
Allegiant Asset Management Group retains both outgoing and incoming
electronic mail, and such e-mail may be subject to internal
and external review.  E-mail correspondence cannot be guaranteed
to be secure, timely or error-free.  Allegiant Asset Management
Group recommends that you do not send confidential information
to us via E-mail, including account numbers, social security
numbers or any person identification numbers.  This communication
is a confidential and proprietary business communication.  It is
intended solely for the use of the designated recipient(s).  If you
have received this communication in error, please contact the sender
and delete this communication.
================================================================================

6/18/2008

Exhibit 6

**Dewerth, Dawn (Allegiant Group)**

| | |
|---|---|
| **From:** | chaupapa@comcast.net |
| **Sent:** | Friday, January 25, 2008 4:40 PM |
| **To:** | roger@crm-investors.com; Dewerth, Dawn (Allegiant Group) |
| **Cc:** | ralf.ffm@gmail.com; VMaes26182@aol.com |
| **Subject:** | Re: Restitution Request |
| **Attachments:** | Restitution Request |

**Chau Papatheodorou**
2317 Saint Francis Drive
Palo Alto, CA: 94303
Ph9one: (650) 494-7725
Email: Chaupapa@comcast.net

Friday, January 25, 2008                    **Without Prejudice**

**To:**    **Mr. Roger Clark**
          Fortress Group USA, LLC
          1428 44th St. SW, Suite E
          Grand Rapids, MI 49509
          Phone:  (616) 530 - 9864
          Fax:      (616) 530 9870
          Email:   roger@crm-investeors.com

**Attention:    Ms. Dawn DeWerth**
          National City Bank
          c/o Allegiant Instructional Services
          200 Public Square 5th Floor
          Cleveland OH: 44114
          Phone: (216) 222 - 9225
          FAX:     (216) 222 7044
          Email:   Dawn.Dewerth@allegiantgroup.com

**cc.    Mr. Vernon Les Maes**
          Consultant
          605 Squires Row,
          San Antonio, Texas: 78123
          Phone: (210) 344 5980
          Fax: :   (512) 857 - 0548
          Email:   VMaes26182@aol.com

**Attachment**:
- Rogers email on Thursday 1/24/08  to Chaus
- Chaus email to Roger regarding confirmation of the liquidation request

Dear Mr. Clark,

　　This is Chau Papatheodorou. I have received your email last night alleging that there was a huge error that occurred in terms of funds that are deposited into the Escrow Account at National City Bank Group. I am devastated and very distraught over this allegation.

Your explanation of what transpired is **simply unacceptable**. My question is:
　　How a bank like National City bank can allow this to occur without, first, notifying you?
　　How can a simple conversion be over looked by the Escrow Agent?

Let me just recap the investment activities since October of 2007. I was informed that the trader was not able to do any trading due to a minor heart attack. To compensate for the Octobers profit, I was offered a full October payment in December plus 10%. Here I am, in January of 2008. I did not receive any payment for October, November, December, and/or January. I was told by you that you did not see or hear from the trader during the Christmas break and/or until now.

When we talked on Thursday January 10th, 2008, at 1:30 PM PST, I was advised by you to put in a request to liquidate all the treasury bills and convert into cash which is to be paid to me in full.

During this conversation, I raised the questions: Does this Escrow Account show any trading activities since October of 2007 and whether it had sufficient balance in Treasury Bills to covers my cash deposit? I was told by you that the T-Bills in the Escrow Account can not be touched by any one. I was also told by you that the balance shown on the account was worth $5M in T-bills. I was told by you that I should start the liquidation procedure and that this procedure would take 3 to 4 days for settlements and disbursement to me.

Mr. Clark, at a minimum, both YOU and National City Bank have been jointly and severally been negligent and/or failed to exercise their fiduciary duty. This letter is marked **without prejudices** and I reserve the right to seek all remedies available to me under law and equity.

Time is of the essence. Please wire the funds to my bank immediately.

Regards,


**Chau Papatheodorou**
2317 Saint Francis Drive
Palo Alto, CA: 94303
Ph9one: (650) 494-7725
Email: Chaupapa@comcast.net

2/8/2008

-------------- Forwarded Message: --------------
From: "Roger Clark" <roger@crm-investors.com>
To: <chaupapa@comcast.net>
Subject: RE: confirmation request to liquidate funds
Date: Thu, 24 Jan 2008 21:29:05 +0000
Chau:

This is going to be hard to explain.  Not hard as complicated, but difficult
personally.  I have never had to do anything like this before.  You need to
understand that I will make you completely whole as soon as I can.

Let me explain.  I had some reservations shortly after we got started with
your transaction because our first deal was just for $100,000 as a test.
However, once yours started, the profits came in so I did not worry any more
until they stopped.  Now that you want to liquidate out, the brown stuff has
hit the fan.  It seems that our trader sent Treasury Notes into the escrow
not as units which the bank records them as and which I understand to be
whole bonds of $1,000 face value (one unit).  When the 5,000 that came into
the escrow account, my understanding was that of 5,000 bonds of $1,000 face
value each.  That in my mind was $5 million face values at the market price
of 33% of face or $1.65 million a good amount to cover you and my other
client that now had $300,000 in the deal.

However, the trader sent them into the escrow account as $5,000 face value
total (thats 5 bonds of $1,000 each) with a market price of 33% the value is
actually $1,650.  I have gone round and round with the bank to no avail.  I
am now preparing my files for the FBI.  In any event they will take a long
time.

In the mean time I am going to Europe next week to meet with some bankers and
we have a large trade starting next week as well.  In either case I will be
in a position to make you completely whole in a couple of weeks.  This is my
fault, therefore, my responsibility.  I have never skated away from any of my
responsibilities.

Please do not send anything more to the bank as Dawn can do nothing for us.
She did as ordered as it was I who authorized the receipt of the Treasuries
into the account.

I am just devastated by this and am now on a fast track to make corrections.

2/8/2008

Please accept my apology.  For now, can we keep this between the two of us?

Thanks.

Roger

**From:** chaupapa@comcast.net [mailto:chaupapa@comcast.net]
**Sent:** Wednesday, January 23, 2008 5:48 PM
**To:** Roger Clark
**Cc:** les maes; Dawn.Dewerth@allegiantgroup.com
**Subject:** confirmation request of liquidated fund

Hello Roger,

Just wanted to check in and see if you have received my request to liquidate my Fortress account. I've sent a fax, email along with a register mail request to you and cc. Ms Dawn Dewerth last Friday, January 18th, 2008.

I greatly appreciate if either you and/or Ms. Dewerth you send me an email or a voice mail acknowledge that you have received the request I would greatly appreciate it. In addition, I would greatly appreciate that you would let me know when I should expect to have the $1M liquidated funds back into my account.

I greatly appreciate your help.

With Warmest Regards

Chau

--
Email: chaupapa@comcast.net
Home (650) 494-7725
Cell: (650) 804 - 1222
Fax: (650) 494 - 1438