1  FRANK R. UBHAUS, CA STATE BAR NO. 46085
   KARA L. ERDODI, CA STATE BAR NO. 221093
2  BERLINER COHEN
   TEN ALMADEN BOULEVARD
3  ELEVENTH FLOOR
   SAN JOSE, CALIFORNIA 95113-2233
4  TELEPHONE: (408) 286-5800
   FACSIMILE: (408) 998-5388
5  frank.ubhaus@berliner.com
   kara.erdodi@berliner.com
6
7  ATTORNEYS FOR PLAINTIFF
   CHAU PAPATHEODOROU

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11 | CHAU PAPATHEODOROU, an individual, | CASE NO. C 08-01905 JW
12 |     Plaintiff, | ASSIGNED FOR ALL PURPOSES to the Honorable James Ware
13 |     v. | Courtroom 8
14 | ROGER CLARK, an individual; CRM INVESTORS CORPORATION, a Michigan corporation; FORTRESS GROUP USA, LLC, a Michigan limited liability company; NATIONAL CITY BANK, an Ohio corporation, and DOES 1 through 50, inclusive, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS CLARK, CRM INVESTORS CORPORATION AND FORTRESS GROUP USA, LLC TO TRANSFOR OR DISMISS FOR IMPROPER VENUE**
18 |     Defendants. |
19 | | Date: September 15, 2008
   | | Time: 9:00 a.m.
   | | Dept.: Courtroom 8
   | | Judge: Hon. James Ware

---

CASE NO. C 08-01905 JW

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION. ............................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND....................................................... 1

    A. FACTUAL BACKGROUND. ............................................................................... 1

    B. PROCEDURAL BACKGROUND. ....................................................................... 5

III. ARGUMENT. .................................................................................................................... 5

    A. THE COURT SHOULD TRANSFER THIS MATTER TO THE NORTHERN DISTRICT OF OHIO FOR THE CONVENIENCE OF PARTIES, WITNESSES AND IN THE INTEREST OF JUSTICE. ..................... 5

    B. THIS CASE SHOULD BE TRANSFERRED RATHER THAN DISMISSED FOR IMPROPER VENUE. .................................................................. 6

        1. PAPATHEODOROU'S DECISION TO FILE THIS ACTION IN FEDERAL COURT AND VENUE IT IN THE NORTHERN DISTRICT OF CALIFORNIA WAS REASONABLE. ............................. 6

        2. TRANSFERRING RATHER THAN DISMISSING THIS CASE WOULD NOT RESULT IN INJUSTICE TO ANY PARTY, AND WOULD SERVE THE INTERESTS OF JUDICIAL ECONOMY. ........... 7

IV. CONCLUSION. ................................................................................................................. 8

# TABLE OF AUTHORITIES

Page

**Cases**

*Bates v. C&S Adjusters, Inc.*
  (2nd Cir. 1992) 980 F.2d 865 ............................................................................................... 7

*First of Mich. Corp. v. Bramlet*
  (6th Cir. 1998) 141 F.3d 260 ................................................................................................ 7

*Goldlawr, Inc. v. Heiman*
  (1962) 369 U.S. 463 .............................................................................................................. 8

*Gulf Ins. Co. v. Glasbrenner*
  (2nd Cir. 2005) 417 F.3d 353 ............................................................................................... 7

*Hoffman v. Blaski*
  (1960) 363 U.S. 335 .............................................................................................................. 5

*Jenkins Brick Co. v. Bremer*
  (11th Cir. 2003) 321 F.3d 1366 ............................................................................................ 7

*Minnette v. Time Warner*
  (2nd Cir. 1993) 997 F.2d 1023 ......................................................................................... 6, 7

*Securities Exchange Commission v. Ross*
  (9th Cir. 2007) 504 F.3d 1130 .............................................................................................. 5

*Stewart Org., Inc. v. Ricoh Corp.*
  (1988) 487 U.S. 22 ................................................................................................................ 5

*TruServ Corp. v. Neff*
  (ND Ill. 1998) 6 F.Supp.2d 790 ........................................................................................... 7

**Statutes**

28 U.S.C. §1391(a)(2) ................................................................................................................ 5, 6

28 U.S.C. §1404(a) ......................................................................................................................... 5

28 U.S.C. §1406(a) ......................................................................................................................... 6

I. **INTRODUCTION.**

Plaintiff Chau Papatheodorou ("Papatheodorou") submits this Opposition to Defendants Roger Clark ("Clark"), CRM Investors Corporation ("CRM") and Fortress Group USA, LLC's ("Fortress")(collectively, the "Clark Defendants") Motion to Transfer or Dismiss for Improper Venue. For the reasons set forth below, and in National City's motion to transfer, the Northern District of Ohio is the proper forum for this case.[1] Accordingly, the Clark Defendants' motion to dismiss for improper venue or transfer this case to the Western District of Michigan should be DENIED.

II. **FACTUAL AND PROCEDURAL BACKGROUND.**

A. **FACTUAL BACKGROUND.**

Papatheodorou is an individual residing in Palo Alto, California. Defendant Roger Clark ("Clark") is an individual who, upon information and belief, resides in Grand Rapids, Michigan. Defendant CRM Investors Corporation ("CRM"), Defendant Fortress Group USA, LLC ("Fortress") are a Michigan corporation and limited liability company, respectively, whose principal places of business are in Michigan.

CRM is a finance consulting organization involved in arranging the sale and/or purchase of bank paper, high-yield private placement transactions, project funding, and private foreign currency exchange. Fortress is a company established in March 2006 to conduct a private placement transaction program involving trading in United States Treasury Bills ("T-Bills"). At all times relevant hereto, Clark was an agent of CRM and Fortress.

National City is a financial holding company engaging in commercial and retail banking, mortgage financing and servicing, consumer finance and asset management. National City has an indirect, wholly-owned subsidiary called Allegiant Asset Management Company ("Allegient"), which offers escrow services and manages and administers assets as a fiduciary for businesses, institutions and individuals.

---

[1] Papatheodorou has concurrently filed a statement of non-opposition to Defendant National City's motion to transfer this case to the Northern District of Ohio.

CASE NO. C 08-01905 JW

-1-

PLAINTIFF'S OPPOSITION TO THE CLARK DEFENDANTS' MOTION TO TRANSFER OR DISMISS

\KERDODI\770281.1
082108-17100001

In July 2007, Papatheodorou was introduced to Clark, who held himself out to be the Program Manager for an investment opportunity called "Fidelity Treasury Bills Trading." In July 2007, Clark explained this program to Chau as follows: Clark works with a trader in New York who was allegedly experienced and well-credentialed (Clark would not divulge the name of the trader, fearing he would be "cut out" of the deal). The trader works for himself and not for any financial institution. The investor must invest a minimum of one million dollars ($1,000,000.00). If the investor wished to invest in excess of one million dollars, he or she could do so, but only in increments of one hundred thousand dollars ($100,000.00). The investor had to commit to at least a five-month term, or could opt to participate in a longer-term contract, but only in five-month increments (i.e., ten months, fifteen months, etc.). The investor's principal investment would be deposited into an escrow account which would be managed and administered by an escrow agent at Allegiant, a subsidiary of National City. An initial escrow fee would apply. At the beginning of each thirty (30) days, the escrow agent would replace the one million dollars in the escrow account with T-Bills worth the sum of the original investment plus thirty percent profit. At the end of each thirty (30) days, the T-Bills would be replaced with the cash equivalent of the sum of the original investment plus thirty percent profit. Once the escrow account was funded with the sum of the original investment plus profit in U.S. dollars, the escrow agent was to wire twenty percent (20%) of the specific amount of each investor's profit to the individual investor's banking coordinates. Clark also receives ten percent (10%) of each investor's profits. If at any time after 30 days the investor was not satisfied or for any reason did not receive profits according to the program's terms, he or she could terminate the agreement and the original investment principal would be wired back into his or her own bank account with no questions asked.

On or about August 16, 2007, Papatheodorou and Clark entered into an agreement entitled "Participation Agreement (United States Treasury Bill Program)," (hereinafter, "Participation Agreement"). Under the Participation Agreement, Papatheodorou invested one million dollars ($1,000,000.00), plus an escrow fee of one thousand five hundred dollars ($1,500.00) in the T-Bill program for a term of fifteen (15) months.

On or about August 16, 2007, Clark, acting on behalf of Fortress, entered into an Escrow Agreement with National City Bank ("Escrow Agreement"). Under the Escrow Agreement, National City agreed to hold Papatheodorou's initial investment principal of one million dollars ($1,000,000.00), less the escrow fee of $1,500.00, in an escrow account "for the sole benefit of" Papatheodorou, known as "Fortress #202 Participation." The Escrow Agreement contains as its Exhibit B a document entitled "Irrevocable Instructions to Release Escrow Fund" (hereinafter, "Escrow Instructions"). The Escrow Instructions to National City set forth the schedule of deposits and release of funds from the Fortress #202 Participation escrow account.

On or about August 15, 2007, Papatheodorou caused $1,001,500.00 to be wired to National City and Allegiant for the Fortress Client #202 Participation escrow account.

Papatheodorou received $180,000.00 profit from her investment in September 2007 and $180,000.00 in October 2007. These funds were received by wire transfer into her personal bank account." No profits were deposited into Papatheodorou's account in November 2007.

On or about November 28, 2007, Papatheodorou spoke on the telephone with Clark, who represented to her that the trader had suffered a minor heart attack a few weeks before Thanksgiving, and had been unable to do any trading in the month of November. On or about November 28, 2007, Clark sent Papatheodorou an e-mail message containing a "sanitized" message from the trader (incorporated into the body of Clark's message, but with any information about the sender, time and date of transmission, etc., deleted). In the e-mail message, the "trader" admitted that there would be no profits for the month of November 2007, but committed to pay November and December profits to Papatheodorou on the regular December 2007 payment date, plus ten percent (10%) additional on the November profit.

On December 6, 2007, Papatheodorou made a trip to Clark's office in Grand Rapids, Michigan. During this trip, Papatheodorou and her husband met with Clark, and had dinner with Clark and his wife, Crystal. During this trip, Clark made several oral representations to Papatheodorou, including: (1) the distribution system is set up in such a way that before the trader makes a buying decision, he must have another "commitment holder" in place for selling the instruments; (2) all of the trading is done on a "pre-contract," "pre-allocated," and "pre-

funded" basis; (3) the trader trades at very high volume and low margin; (4) trading is done Monday through Thursday, with three to four trades occurring per day, and Friday is the settlement date; (5) when the investor's money is deposited into the escrow account, the trader take out a line of credit based on the total cash value on the accounts for trading purchases; (6) in the T-Bills program Papatheodorou was involved in, the trader must deposit T-Bills into the account to replace the cash at the beginning of each month, and replace the T-Bills with cash at the end of each month, so the client's principal investment "does not move," but "stays in the account the entire time," and the profit is deposited into the client's account at the end of each month.

No profits were deposited into Papatheodorou's account in December 2007. Papatheodorou contacted Clark just before the Christmas holiday, 2007. Clark represented to Papatheodorou he had not heard from the trader, and advised her to wait until after the holidays to check in again. During the first week of January 2008, Papatheodorou continued to contact Clark, who again represented to Papatheodorou that he had not heard from the trader and did not know of the trader's whereabouts. Clark suggested that Papatheodorou wait until the second week of January 2008, at which time, if they had not heard from the trader, they would plan a course of action.

On or about January 18, 2008, Papatheodorou sent Clark and the National City escrow agent notice by facsimile, e-mail and certified mail, a Request to Liquidate the Fortress #202 Participation escrow account, instructing Clark and the escrow agent, Dawn Dewerth, to wire her one million dollars to her personal bank account. On or about January 25, 2008, Papatheodorou sent Clark and NCB escrow agent Dawn Dewerth correspondence, again demanding that her escrow account be liquidated and the funds wired to her personal account immediately.

Clark has failed to return any of Papatheodorou's one million dollar principal investment. National City has refused and continues to refuse to return the funds from Papatheodorou's escrow account to her.

///

///

B.   PROCEDURAL BACKGROUND.

Papatheodorou filed her complaint in the Northern District of California on or about April 10, 2008. On or about May 23, 2008, the Clark Defendants filed a motion to transfer this case to the Western District of Michigan. On or about July 3, 2008, National City filed its motion to dismiss for improper venue or transfer to the Northern District of Ohio and to dismiss under FRCP 12(b)(6). Papatheodorou has concurrently filed a statement of non-opposition to Defendant National City's motion to transfer this case to the Northern District of Ohio, an opposition to National City's motion to dismiss for improper venue, and an Opposition to National City's motion to dismiss pursuant to FRCP 12(b)(6).

## III. ARGUMENT.

### A. THE COURT SHOULD TRANSFER THIS MATTER TO THE NORTHERN DISTRICT OF OHIO FOR THE CONVENIENCE OF PARTIES, WITNESSES AND IN THE INTEREST OF JUSTICE.

For the convenience of parties, witnesses and in the interest of justice, the court has discretion to transfer an action "to any other district or division where it might have been brought." 28 U.S.C. §1404(a); *Hoffman v. Blaski*, 363 U.S. 335, 343-343 (1960). To qualify as The courts look to whether the transferee court would have personal jurisdiction over the defendants, and whether venue is proper. *Id.* The court must consider any forum selection clause between the parties, but determination of party and witness "convenience" and "interests of justice" is committed to the court's discretion. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988).

Clark and National City's Escrow Agreement contains a forum selection clause naming Ohio as the venue for any disputes arising out of the agreement. In the Escrow Agreement, Clark waived personal jurisdiction. Even had he not, he subjected himself to personal jurisdiction in Ohio when he agreed to the Escrow Agreement's forum selection clause. See *Securities Exchange Commission v. Ross* (9th Cir. 2007) 504 F.3d 1130, 1149.

Further, venue is proper where a substantial portion of the events or omissions giving rise to the plaintiff's claims occurred in that district. 28 U.S.C. §1391(a)(2). Here, a substantial number of the acts and omissions giving rise to Papatheodorou's claims occurred in

Ohio, including her performance of the Participation Agreement (via deposit of investment monies into the National City escrow account), Clark's performance of the Participation Agreement (including trading T-Bills and depositing funds into the escrow account), National City's performance of the Escrow Agreement (including setting up the escrow account and disbursing sums through it), Clark's breach of the Participation Agreement (including omitting to engage in T-Bill trading or depositing funds into the escrow account), and all defendants' refusal to liquidate the escrow account upon Papatheorodou's request and return to her the full sum of her investment, or at least that portion of which still remains in the escrow account. Accordingly, venue in Ohio would be proper.

Venue in Ohio is also in the interests of justice and is relatively convenient for the parties. It appears, based upon the parties' moving papers, that an equal number of witnesses may be located in California, Michigan, and Ohio, respectively. It is no more inconvenient for Clark to travel to Ohio to participate in this matter than it is for Papatheodorou, a California resident, to litigate her claim there.

### B. THIS CASE SHOULD BE TRANSFERRED RATHER THAN DISMISSED FOR IMPROPER VENUE.

Transfer is an appropriate alternative to dismissal for improper venue. The court has discretion in deciding whether to transfer a case where venue is improper or dismiss it outright. 28 U.S.C. §1406(a) was enacted to provide an alternative to dismissal. Transfer avoids any statute of limitations problems and the necessity of filing and serving a new action. *Minnette v. Time Warner* (2nd Cir. 1993) 997 F.2d 1023, 1026-1027.

#### 1. PAPATHEODOROU'S DECISION TO FILE THIS ACTION IN FEDERAL COURT AND VENUE IT IN THE NORTHERN DISTRICT OF CALIFORNIA WAS REASONABLE.

Where federal subject matter jurisdiction is based solely on diversity of citizenship, venue is proper in a district in which a "substantial part of the events or omissions" on which the claim is based occurred, or where is located a "substantial part of the property" that is the subject of the action. 28 U.S.C. §1391(a)(2). Only those events or omissions which have a nexus to the wrong are relevant. *Jenkins Brick Co. v. Bremer* (11th Cir. 2003) 321 F.3d 1366,

1372 (court looked to the place the contract was negotiated and executed, and place of performance and breach). The events or omissions relating to the claim may take place in several districts. *Bates v. C&S Adjusters, Inc.* (2nd Cir. 1992) 980 F.2d 865, 867. There is no requirement that a majority of the events or omissions take place in the district where suit is filed; nor that the events there predominate. It is sufficient that a "substantial part" occur there. *Jenkins Brick Co. v. Bremer, supra*, 321 F.3d at 1371; *Gulf Ins. Co. v. Glasbrenner* (2nd Cir. 2005) 417 F.3d 353, 356. A plaintiff may choose either of several districts having relatively equal connections with the dispute. *First of Mich. Corp. v. Bramlet* (6th Cir. 1998) 141 F.3d 260, 264; *TruServ Corp. v. Neff* (ND Ill. 1998) 6 F.Supp.2d 790, 792.

In this case, Clark made fraudulent misrepresentations to Papatheodorou in California, Clark presented the Participation Agreement to Papatheodorou in California, Papatheodorou executed the Participation Agreement in California, Papatheodorou discovered Clark's and National City's breaches of the written agreements in California, Clark made further misrepresentations to Papatheodorou in California, and Papatheodorou acted in California to terminate the Participation Agreement with Clark and request that National City liquidate the escrow account in which her investment funds were held and return them to her. A substantial part of the events upon which Papatheodorou's claims are based took place in California. Accordingly, Papatheodorou's choice of California as the venue for her claim was reasonable, and the claim should be transferred to Ohio rather than dismissed for improper venue.

2. <u>TRANSFERRING RATHER THAN DISMISSING THIS CASE WOULD NOT RESULT IN INJUSTICE TO ANY PARTY, AND WOULD SERVE THE INTERESTS OF JUDICIAL ECONOMY.</u>

Transfer of an action is an appropriate alternative to outright dismissal for improper venue. Normally, if there is another district or division in which the action could have been brought, transfer is *preferred* to the harsh remedy of dismissal. *Minnette v. Time Warner* (2nd Cir. 1993) 997 F.2d 1023, 1026-1027.

> The language of 28 U.S.C. 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue… The statute is thus in accord with the general purpose of…removing whatever obstacles impede an expeditious and orderly adjudication of cases and controversies on their merits… If by reason of the uncertainties of

> a proper venue a mistake is made, Congress, by the enactment of 1406(a), recognized that the "interest of justice" may require that the complaint not be dismissed but rather that it be transferred…

*Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467 (1962).

Here, for the reasons set forth above, as well as those National City set forth in its Motion to Transfer, this action could have been filed in Ohio and so transferring this case to that venue is appropriate. Further, transferring this matter would permit the case to go forward without the necessity of dismissing the current claim and filing another complaint in the Northern District and again effectuating service of process on all defendants. Transfer, rather than dismissal, serves the interests of judicial economy. Finally, transferring this matter will also avoid the imposition of injustice upon any of the parties.

## IV.   CONCLUSION.

For all the reasons contained herein, Papatheodorou respectfully requests that this court transfer this matter to the Northern District of Ohio, and that the Clark Defendants' Motion to Transfer this matter to the Western District of Michigan and Motion to Dismiss for Improper Venue be DENIED.

Dated: August 22, 2008                                   **BERLINER COHEN**

By:_____/s/_____
   Frank Ubhaus
   Kara L. Erdodi
   Attorneys for Plaintiff
   Chau Papatheodorou